CASWELL & SMITH v. STATE.†

(Court of Civil Appeals of Texas. Austin.
May 15, 1912. Rehearing Denied
May 29, 1912.)

1. CONSTITUTIONAL LAW (§ 81*) — POLICE POWER.

The state may, within its police power, to preserve the peace and welfare of society, and to guard each individual from unlawful encroachment on his rights of person or property, regulate or prohibit any business, the pursuit of which may become the fruitful

source of disturbances materially interfering with the public safety; and a law tending to conserve the peace and safety of the citizen and to safeguard his welfare will be upheld.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

2. LICENSES (§ 7*)—REGULATION OF SALE OF PISTOLS—VALIDITY.

Acts 30th Leg. (1st Ex. Sess.) c. 18, as amended, imposing a tax of 50 per cent. of the gross receipts of sales of pistols, is a valid exercise of the police power, since the immediate and direct result of the pursuit of the business of selling pistols may be regarded as harmful to the best interests of society, and, though the statute imposes a tax, it does not lose its character as a police regulation.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7–15; Dec. Dig. § 7.*]

3. LICENSES (§ 7*) — REGULATIONS OF OCCUPATIONS—VALIDITY.

While, under the police power, a regulation or tax may be imposed on a useful occupation, the operation of which is not hurtful to society, yet legitimate business cannot be destroyed, and a statute imposing an unreasonable tax on such business, under the guise of an occupation tax, is unconstitutional; but this rule does not apply to occupations which are detrimental to the health, morals, or good order of society.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7–15, 19; Dec. Dig. § 7.*]

4. WEAPONS (§ 3*)—RIGHT TO BEAR ARMS—CONSTITUTIONAL PROVISIONS.

The second amendment to the United States Constitution, guaranteeing the right of the people to bear arms, is a limitation on the authority of Congress, and not on the states.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. § 3; Dec. Dig. § 3.*]

5. WEAPONS (§ 3*)—RIGHT TO BEAR ARMS—STATUTES—VALIDITY.

Acts 30th Leg. (1st Ex. Sess.) c. 18, as amended, imposing a tax of 50 per cent. of the gross receipts of sales of pistols, is not violative of Const. Bill of Rights, § 23, guaranteeing to every citizen the right to bear arms, since the act does not infringe or attempt to infringe the right of the citizen to bear arms, nor does it prohibit a dealer in the state from selling them; and, even if it did, the statute would not be violative of the constitutional guaranty.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. § 3; Dec. Dig. § 3.*]

Appeal from District Court, Travis County.

Action by the State against Caswell & Smith. From a judgment ·for plaintiff, defendants appeal. Affirmed.

J. L. Peeler, of Austin, for appellants. Jewel P. Lightfoot, Atty. Gen., and John W. Brady and C. E. Mead, Asst. Attys. Gen., for the State.

RICE, J. By section 12, c. 18, of the Acts of the First-Called Session of the Thirtieth Legislature, p. 479, all dealers in pistols and other firearms were required to make report, under oath, to the Comptroller on or before the 1st of July, 1907, and quarterly thereafter, showing the gross amount, collected and uncollected, from sales of such firearms during the preceding quarter, and at the same time to pay to the State Treas-urer an occupation tax of 50 per cent. of the gross receipts of all such sales, as shown by said report; and section 19 of said act prescribed a penalty of 10 per cent. in the event of failure, after 30 days, to pay the same. This law has been since so amended as to apply to sales of pistols alone. See New Revised Statutes, adopted by the Thirty-Second Legislature, art. 7380, c. 2, tit. 126. Appellants made the report in accordance therewith, but refused to pay 50 per cent. of said gross receipts from such sales, and this suit was brought by the state to recover said amount, as well as the penalty denounced for such failure. Appellants sought to defeat said recovery on the ground that such tax and penalty were prohibitory and confiscatory of their business, which they claimed to be a useful and harmless occupation, and for which reason it was claimed that said tax was illegal and unconstitutional. It was also contended that the act in question was unconstitutional and void, because it denied to appellants the privilege of selling, and the people the right of purchasing, keeping, and bearing, arms, within the spirit and meaning of section 23 of the Bill of Rights of this state and the second amendment to the federal Constitution.

The case was submitted to the court upon an agreed statement of facts, who rendered judgment for the state, from which appellants have appealed; it appearing therefrom that under the operation of said law dealers in pistols and firearms in this state were unable to pay the tax and sell said articles in competition with outside dealers, and that the peace officers of this state, numbering some 5,000, had since said time been purchasing their pistols without the state.

[1] If the sale of pistols can be classed as a harmless pursuit or occupation, such, for instance, as the sale of ordinary merchandise, then the fact that the Legislature has undertaken by its taxing power to impose a tax upon dealers therein, so great in amount as to be prohibitory of their business, then there is much force in appellants' contention. But is this true? While the sale of a pistol, within itself, cannot be said to be harmful or deleterious to the welfare, good order, or security of society, any more than the sale of any other article of merchandise, still the ulterior use that frequently is made of such weapon may be taken into consideration in determining whether or not the act of selling it should be so taxed as to diminish, if not possibly to prohibit, the same. It is a matter of common knowledge that the indiscriminate carrying and use of pistols leads often to gross violations of law, such as affrays, broils, and murders, for which reason the state is justified in keeping a constant vigil, not only upon their sale and other methods of procurement, but their use as well; and for many years the

law of this state has prohibited, with certain exceptions, the carrying of pistols, imposing heavy penalties against its infraction; and other states have similar laws. This being true, is not the government, which is instituted for the preservation of the peace and welfare of society, as well as for guarding each individual from unlawful encroachment upon his rights of person or property, justified, not only in regulating, but also in absolutely prohibiting, any business, the pursuit of which may become the fruitful source of such disorders and disturbances as materially interfere with public safety? We think so. If this be true, then any law which tends to conserve the peace and safety of the citizen and safeguard his welfare should be upheld. We might cite numerous cases illustrating the rule above announced, only a few of which, however, are necessary for our purpose.

In Thompson v. State, 17 Tex. App. 257, defendant was convicted of unlawfully pursuing the occupation of selling the Police News and Gazette, without paying the tax ($500 in each county where the sale was made or offered to be made) prescribed by law. This law was assailed as unconstitutional, on the ground, among others, first, that the tax levied by it was not equal and uniform upon the same class of subjects; and, second, it was oppressive, vague, and uncertain and beyond the power of the Legislature. Mr. Justice Willson held against each of these positions, saying with reference to the second that the taxing power must be left to that part of the government which is to exercise it (that is, the Legislature); and it is only where statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any sense proportional in their effect of those who are to bear the public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void. Quoting from Mr. Cooley, he said: "The power to impose taxes is one so unlimited in force, and so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, such as rest in the discretion of the authority which exercised it. It reaches to every trade or occupation, to every object of industry, use, or enjoyment, to every species of possession—" holding, therefore, that it was not for that court to say whether this tax is oppressive; "that was a question for the Legislature to pass upon, and the judiciary has no right to inquire into it. It is to be conclusively presumed that the Legislature had good and sufficient reasons for imposing this tax upon persons selling or offering to sell the publications named, and all other publications of the same character." Remarking that it was a matter of notoriety that when this law was enacted an illustrated publication, known as the Police News, and another known as the Police Gazette, were offered for sale and were sold in all the cities of the state and upon the passenger trains of all the railroads in the state; and, further, that these publications were of an indecent, immoral, and pernicious character, and that many of the citizens of the state demanded some legislation that would prevent, restrict, or regulate the sale of this class of publications, and that the facts were of such notoriety that the courts would take judicial notice thereof in arriving at the meaning, scope, and purpose of the act in question.

[2] The main contention on the part of appellants is that, since their business was a useful and harmless occupation, and the tax in question was imposed as a revenue measure, the Legislature was without power to enact it, since the amount of such tax was excessive and unreasonable. We are not prepared to admit their premise in either respect. Notwithstanding many of the provisions of the act from which this section is taken had for their object the raising of revenue, still this section comes within the police power, which authorizes its enactment, provided said business so taxed can be classed as harmful to the welfare of society, which we have undertaken to show; but it has been held that a license fee does not lose its character as such, and cease to be sustainable as a police regulation, merely because called a tax in the legislation which permits it. Levy v. State, 161 Ind. 251, 68 N. E. 172. It is also said that the power to license may be exercised for regulation, revenue, or prohibition, but not for monopoly. See 25 Cyc. 599.

[3] The rule seems to be well settled that, while, under the police power, a regulation, or tax may be imposed upon a useful occupation, the operation of which is not hurtful or deleterious to society, still that such legitimate business cannot be destroyed by reason of this power. Therefore, in keeping with this principle, the courts have usually held that laws which exacted an unreasonable amount from such business, under the guise of an occupation tax, are unconstitutional and void; but this rule, it must be observed, does not apply to those occupations which are detrimental to the health, morals, or good order of society. See Town of Pikeville v. Huffman, 112 Ky. 360, 65 S. W. 794, 23 Ky. Law Rep. 1692; Commonwealth v. Payne Medicine Co., 138 Ky. 164, 127 S. W. 760. So that the pursuit of the business under consideration, if entirely a useful and harmless one, could not be so taxed as to destroy it; but if it be admitted that the sale of pistols has a tendency to be hurtful to the welfare of society, then and in that event the lawmaking power, in their discretion, in our judgment, would have the right, not only to levy an excessive

tax, which would be prohibitory thereof, but could go further and absolutely prohibit any one from engaging therein. See Dabbs v. State, 39 Ark. 353, 43 Am. Rep. 275.

In the recent case of Ex parte Flake, 149 S. W. 146, our Court of Criminal Appeals, in an elaborate opinion by Mr. Justice Harper, sustained the act of the Thirty-First Legislature imposing an annual state tax of $2,000 on the cold storage business in local option districts, where intoxicating or nonintoxicating liquors or beverages are kept on deposit, which act was assailed as being unconstitutional for various reasons, holding that, notwithstanding the heavy tax imposed, the act was a police regulation, sustainable on the ground that the business was harmful to society and public morals of the citizens. The Legislature, by another act, imposed a tax of $5,000 upon express companies engaged in the business of carrying intoxicating liquors, by means of C. O. D. shipments, into local option districts. This law was upheld as the proper exercise of police regulation in the case of Craddock & Co. v. Wells Fargo Co., 125 S. W. 59, notwithstanding the fact that it was denominated an occupation tax, and, in the nature of things, prohibitive.

The case of Edmandson v. State (Tex. Cr. R.) 142 S. W. 887, involved the act of the Legislature which imposed upon persons pursuing the occupation of selling or offering for sale intoxicating liquors by soliciting or taking orders in any county, justice precinct, etc., where local option had been adopted, an annual state tax of $4,000, authorizing each county, city, and town to levy an additional tax, not to exceed $2,000 each. This law was also upheld by the Court of Criminal Appeals against an attack made upon its constitutionality; Mr. Justice Harper saying: "Neither do we think the act invalid because of excessive levy or charge for licensing the occupation. It is a police regulation, and not a tax. The federal court, the Court of Civil Appeals, and this court have sustained an act levying a tax of $5,000 on persons and corporations pursuing the business of delivering C. O. D. shipments of intoxicating liquor. The courts of this state sustained a license or tax of $1,200 on tenpin alleys; and numerous other instances might be cited where the object and purpose was not revenue, but a regulation. The question of taxing, licensing, and regulating occupations are matters peculiarly within the legislative branch of the government; and if, in their judgment, a given occupation is hurtful to the best interest of the state, or tends to the corruption of or affects the health or morals of its citizenship, it is a matter within their discretion, so long as their action is not arbitrary or unreasonable; and so long as it acts within the power delegated to them the courts will not interfere."

In the case of Dabbs v. State, supra, touching the constitutionality of a statute of Arkansas making it, among other things, a misdemeanor for any person to sell any pistol, except such as are used in the army and navy of the United States, and known as the navy pistol, it is held by the Supreme Court of that state that the act was constitutional, being enacted as a measure for the prevention of crime, and was intended to prohibit the pernicious habit of wearing such dangerous or deadly weapons.

It is said in the able brief of the state that, "in the Texas cases from which we have quoted, it has clearly been shown that there is no force in the contention that the act of the Legislature in question is a tax or revenue measure, and that the authority to levy it must be measured by the taxing power of the state alone. It is abundantly shown by the Texas cases that, although laws of this kind may be called occupation tax measures, yet, if the facts surrounding the subject show that it was intended as a police regulation, or if it is a subject coming within the police power, the authority of the state to deal with the subject will be measured by the police power of the state, and not by the taxing power."

Further it is said therein: "Our view of the matter is that the Legislature had the right to assume that the sale of pistols in this state fostered and encouraged the promiscuous carrying thereof; and, under the police power of the state, it had the unquestioned right to impose this large tax upon their sale, and in doing so it violated no provision of the Constitution, and did not infringe upon any inherent right of any citizen."

We adopt the view that the act under consideration is not unconstitutional, for the reason that the same is an attempted exercise of the police power of the state; and, since the immediate and direct result of the pursuit of this occupation may be regarded as harmful to the best interests of society, the Legislature, we believe, had the power to pass the act in question, notwithstanding its operation may tend not only to diminish the sale of such weapons; but this would be equally true, in our judgment, if the effect thereof was to wholly prohibit such sales within this state, which it does not undertake to do.

[4] With reference to the contention that the law under consideration is violative of the second amendment to the federal Constitution, the phraseology of which is that "the right of the people to keep and bear arms shall not be infringed," we think it only necessary to add that if this section contravenes said provision, as appellants claim, still we think that said act of the Legislature would not be violative thereof, for the reason that it has been expressly and uniformly held that the limitation referred to therein only applies to the author-

ity of Congress, and not to the states, to pass laws infringing the right of the people to keep and bear arms. See Pressner v. State of Illinois, 116 U. S. 252, 6 Sup. Ct. 580, 29 L. Ed. 615; United States v. Cruikshanks, 92 U. S. 542, 23 L. Ed. 588; Fife v. State, 31 Ark. 455, 25 Am. Rep. 556; State v. Shelby, 90 Mo. 302, 2 S. W. 468; Andrews v. State, 3 Heisk. 172.

[5] Nor do we think that this act is violative, either of the letter or spirit, of our own Constitution on this subject. In the case of State v. Duke, 42 Tex. 455, where the constitutionality of our statute on the subject of unlawfully bearing arms was assailed, it was held by our Supreme Court that, since the act undertook to regulate the place where and the circumstances under which a pistol might be carried, and in doing so it appeared to have respected the right to carry a pistol openly when needed for self-defense, or in the public service, as well as the right to have one at home, or at one's place of business, the same was valid.

The present act does not infringe or attempt to infringe the right on the part of the citizen to keep or bear arms; nor does it prohibit a dealer in this state from selling them; and, even if it did, we think the act in question would not be violative of this provision.

Believing said law is not subject to the attack made upon it in either respect, we overrule both assignments and affirm the judgment of the trial court.

Affirmed.