RILEY, STATE AUDITOR, *v.* AYER & LORD TIE CO.*

(In Banc.    May 30, 1927.)

[113 So. 214.    No. 26586.]

1. CONSTITUTIONAL LAW. *Licenses. Privilege tax of twenty-five cents per thousand feet on timber treated by creosoting plant held unconstitutional as denying equal protection (Laws 1926, chapter 118, section 77: Const. U. S. Amend. 14).*

   Privilege tax of twenty-five cents per thousand on each thousand feet of lumber treated by creosoting plant, imposed by Laws 1926, chapter 118, section 77, *held* unconstitutional and void as in violation of Const. U. S. Amend. 14, in that it denied equal protection of law in imposing a prohibitive tax for carrying on business of creosoting timber.

2. LICENSES. *Annulment of law imposing privilege tax on creosoting plants re-establishes law thereon in full force (Laws 1926, chapter 118; Laws 1912, chapter 111).*

   Where Laws 1926, chapter 118, imposing privilege tax on creosoting plants, was void, annulment re-establishes, in full force, previous law relative thereto, being Laws 1912, chapter 111, in view of provision that no law not conflicting therewith should be repealed thereby though not brought forward.

---

*Corpus Juris-Cyc References: Licenses, 37CJ, p. 186, n. 95; p. 187, n. 97; p. 190, n. 35; p. 192, n. 51; p. 193, n. 52; p. 198, n. 18; p. 200, n. 30, 33; p. 213, n. 62.

APPEAL from chancery court of Hinds county, First district.

HON. V. J. STRICKER, Chancellor.

Suit by the Ayer & Lord Tie Company against George D. Riley, State Auditor. Judgment for complainant, and defendant appeals. Affirmed.

*Rush H. Knox,* Attorney-General, for appellant.

After giving this matter thorough consideration, I am of the opinion that this case should be affirmed, inasmuch as I am convinced that it was not the intention of the legislature in rewriting the Privilege Tax Code to prohibit any legitimate business enterprise from conducting its business in this state; and to contend that the privilege tax should be twenty-five cents per thousand feet, as provided in section 77, chapter 118, Laws of 1926, would be contending for a tax that would prohibit the operation of creosoting plants in Mississippi.

I believe the legislature intended to make this tax two and one-half cents per thousand feet, board measure, which I find makes a very reasonable privilege tax in keeping with the tax imposed upon enterprises of similar nature.

It is my idea that while the principle as laid down in the case of *Miller* v. *I. C. R. R. Co.*, 111 So. 558, is peculiarly applicable to *ad valorem* taxes, yet I see no reason why it should not apply in cases like this where it is evident a mistake has been made in the recodification of a statute.

*C. C. Grassham* and *F. H.* and *F. I. Lotterhos,* for appellee.

I. *It was not the intention of the legislature to change the basis or rate of taxation.* The so-called codification of privilege tax laws was substantially a compilation into one chapter of the many laws found in the Code of 1906 and the acts of the legislature subsequent thereto, and it was provided that nothing should be repealed except such as might be in conflict with the chapter codifying the many statutes.

It is easy to understand how in this translation a misplaced decimal point brought about the shocking result of language purporting to multiply the already heavy

taxation and penalties ten times. Consideration of the act of 1912 sought to be brought forward into the compilation, and particularly sections 2 and 3 thereof, as brought forward sections 78 and 79, unchanged, makes it manifest that the intention was to continue the tax upon the basis of the timbers treated and sold and, therefore, that the omission of reference to the sale of the treated timbers as being the basis for taxation was an unintended omission.

In the light of the purpose to develop industry rather than to destroy it, shown by the laws of 1926, one is entirely warranted in urging that it conclusively appears that the legislature did not intend to impose such a tax as section 77 would imply, and drive from the state the only industry conserving the forests and one which creates large values from otherwise practically worthless materials for the benefit of the landowners in Mississippi.

Courts seek to find the legislative intention regardless of words used, and have the power and the desire to carry out that intention if not violative of the constitution, as is well illustrated by authorities such as: *Boyd* v. *Cole,* 111 So. 600; *Roseberry* v. *Norsworthy,* 135 Miss. 845, 100 So. 514; *Adams* v. *R. R. Co.,* 75 Miss. 275, 22 So. 824.

There are many decisions of this court to the effect that in construing a statute the court must seek the real intention of the legislature and then adopt such interpretation as will give effect thereto. *Kennington* v. *Hemingway,* 100 Miss. 259, 57 So. 809; *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703, where the rule is announced that the court will look to the history of the law, the entire legislation on the subject, its policy and reason, and statutes relating to the same subject which are to be taken as one system with the act in question and construed consistently; *Adams County* v. *Catholic Diocese,* 110 Miss. 890, 71 So. 17; *Henderson* v. *Blair,* 102 Miss. 640, 59 So. 856; *Johnston* v. *Reeves & Co.,* 112 Miss. 227, 72 So. 925; and *State* v. *Ware,* 102 Miss. 634, 59 So.

854, where the court concluded that a word in the statute should be regarded as having been inserted by a clerical mistake.

It is submitted that upon the impossibility of operation as written  and upon the intention of the legislature not to impose this unjustifiable measure of taxation, the court should before reaching the questions of unconstitutionality, find that the tax should be at the rate and upon the basis provided by section 1 of chapter III, Laws of 1912, whether the administrative feature be taken from sections 2 and 3 of the act of 1912 or sections 78 and 79 of the act of 1926.

II.  *The act of 1926 is unconstitutional and void.*  The proposed tax of twenty-five cents on each thousand board feet of timber treated and sold, or treated, denies the appellee the equal protection of the laws in violation of the fourteenth amendment of the Constitution of the United States, and deprives it of its property without due process of law in violation of said fourteenth amendment and in violation of section 14 of the Constitution of Mississippi.

*\*Reporter's Note*:  A host of authorities cited in this brief are set out in the court's opinion.

HOLDEN, P. J., delivered the opinion of the court.

The Ayer & Lord Tie Company, a corporation operating a creosoting plant, enjoined the state auditor from the collection of the privilege tax imposed against it for the privilege of carrying on the business of a creosoting plant in this state, under sections 77, 79, chapter 118, Laws of 1926.  Section 77 of the act imposing the tax reads as follows:

"*Creosoting Plants.*—Each creosoting plant operated in this state shall pay a privilege tax or occupation fee for running their business of twenty-five cents (25c) per

thousand upon each thousand feet of timber board measurement, of any kind and all kinds treated at the plants.''

Section 78 of the act provides the method of ascertaining the tax and the collection thereof by the state auditor, and section 79 provides a penalty for failure to pay the tax, after demand, and the manner of collecting the penalty from the taxpayer.

The last two sections named are exact rescripts of sections 2 and 3 of chapter 111, Laws of 1912, which provide for the ascertainment and collection of the privilege tax imposed by section 1 of chapter 111, Laws of 1912, which reads as follows:

''Each creosoting plant operated in this state shall pay a privilege tax or occupation fee for running their business of one fortieth (1-40) of one mill upon each foot of timber, board measurement, of any and all kinds treated at the plants and sold,''
and is brought forward as section 77 of said chapter 118, Laws of 1926; but it will be observed that the provisions of section 77, chapter 118, Laws of 1926, are different from those of section 1, chapter 111, Laws of 1912, as we shall point out and discuss.

Section 1 of chapter 111, Laws of 1912, provided that each creosoting plant should pay a privilege tax of one-fortieth of one mill upon each foot of timber, board measurement, of any and all kinds treated at the plants ''and sold.'' One-fortieth of one mill equals two and one-half cents upon each thousand feet of timber treated by the creosoting plant. The said section 77 of chapter 118, Laws of 1926, changes the said section 1 of chapter 111, Laws of 1912, in that it imposes a privilege tax of twenty-five cents per thousand upon each thousand feet of timber ''treated at the plant'' (''sold'' being omitted).

Thus it will be seen that, in bringing forward the privilege tax law, the first section of tha chapter imposing the tax against creosoting plants was changed, either by intention or by mistake in the transcript, so as to

impose a privilege tax of twenty-five cents per thousand feet of timber treated with creosote, instead of two and one-half cents per thousand feet of timber treated "and sold." The tax imposed by the 1926 act is ten times greater than that imposed by the act of 1912. It will also be noticed that the 1912 section fixes the tax against the timber treated "and sold;" whereas the tax under the 1926 sections is alone against the timber treated.

Therefore it will be seen that sections 78 and 79 of chapter 118, Laws of 1926, which are exact rescripts of sections 2 and 3 of chapter 111, Laws of 1912, are not workable with section 77, for the reason that the ascertainment and collection sections do not fit in with section 77, chapter 118, Laws of 1926, because the last-named sections provide that the tax shall be on the "total board foot output and total gross sales of such plant," whereas the section imposing the tax provides that the tax shall be upon the timber "treated at the plants." So, it is argued by counsel for the creosoting company, that the act is void as being unworkable, and means nothing. However, we shall omit a discussion of this contention, because the case will be decided upon another point.

The bill of complaint of the creosoting company charges, among other things, that it is engaged in the legitimate business of creosoting timber and forest products, which process prevents decay of the timber and prolongs its life by such treatment; that the material so treated is obtained from the forests of Mississippi, and that its business is to treat and sell at its plant such products, and that the creosoting plant is operated for that purpose; that the products of this plant, after treatment, are sold in this state and shipped and distributed in other states; that the creosoting company heretofore paid a privilege tax for one thousand seven hundred thirty-five dollars and seventy-five cents per annum for the privilege of carrying on its business, but that the tax now assessed under the 1926 law is ten times greater than that imposed by the 1912 law, amounting to seventeen

thousand three hundred fifty-seven dollars and forty-one cents instead of one thousand seven hundred thirty-five dollars seventy-five cents; that the tax under the 1926 law is so unreasonable and excessive as to be prohibitive, and, if imposed and collected, will destroy the business of the creosoting company and amount to confiscation of its property; that it is contrary to the due process and equal protection clauses of the Fourteenth Amendment to the federal Constitution; that the tax imposed by the last act is prohibitive, and is also discriminatory in that no such prohibitive tax is imposed upon like businesses and industries; and that the tax imposed is so great that the business will not survive it, because the products of the plant cannot be sold upon the market in competition with other like businesses which are not subject to such a prohibitive tax. The attorney-general demurred to the bill of complaint, thus admitting the truth of the charges; and, when the court overruled the demurrer, the state refused to plead further. Judgment was rendered accordingly, from which this appeal is prosecuted. The attorney-general concedes the invalidity of the 1926 act as denying equal protection of the law.

We have reached the conclusion that the privilege tax imposed by chapter 118, Laws of 1926, is unconstitutional and void, because it violates the Fourteenth Amendment to the federal Constitution, in that it denies equal protection of the law in imposing a prohibitive tax for carrying on the business of creosoting timber, whereas other businesses of like kind are not thus assessed with a prohibitive tax. To put it in different words, the particular business here in question is destroyed by the prohibitive tax imposed, when like businesses are not destructively taxed; consequently, the imposition of the tax is discriminatory and denies equal protection of the law. 37 C. J., pp. 186, 190, 192, 193, 198, and 200; 12 C. J. 1155; *Adams* v. *Standard Oil Co.*, 97 Miss. 879, 53 So. 692; *Rodge* v. *Kelly*, 88 Miss. 209, 40 So. 552, 11 L. R. A. (N. S.) 635, 117 Am. St. Rep. 733; *State* v. *Law-*

*rence,* 105 Miss. 58, 61 So. 975; *State* v. *Allen,* 83 Fla. 214, 91 So. 104, 26 A. L. R. 735; *Roach* v. *Ephren,* 82 Fla. 523, 90 So. 609; *Fiscal Court* v. *F. & A. Cox Co.,* 132 Ky. 738, 117 S. W. 296, 21 L. R. A. (N. S.) 83; *Kendrick* v. *State,* 142 Ala. 43, 39 So. 203; *Sallsbury* v. *Equitable Purchasing Co.,* 177 Ky. 348, 197 S. W. 813, L. R. A. 1918A, 1114; *People* v. *Wilson,* 249 Ill. 195, 94 N. E. 141, 35 L. R. A. (N. S.) 1074; *Louisville* v. *Pooley,* 136 Ky. 286, 124 S. W. 315, 26 L. R. A. (N. S.) 582; *Ex parte Stoddard,* 35 Nev. 504, 131 P. 133; *Sperry & Hutchinson Co.* v. *State,* 188 Ind. 173, 122 N. E. 584; *Owens* v. *State,* 53 Tex. Cr. R. 105, 112 S. W. 1075, 126 Am. St. Rep. 772; *Caswell & Smith* v. *State* (Tex. Civ. App.), 148 S. W. 1159; *Ex parte Hutchinson* (C. C.), 137 F. 949, 950; *Waters-Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509, 109 S. W. 293, 16 L. R. A. (N. S.) 1035; *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892. The act being void and the privilege tax laws having provided that "no law not in conflict herewith shall be repealed hereby, though not brought forward," the annulment of chapter 118, Laws of 1926, reestablishes, in full force, chapter 111, Laws of 1912.

The judgment of the lower court is affirmed.

*Affirmed.*

SMITH, C. J., expressed no opinion.

ETHRIDGE, J. (specially concurring).

I concur with Judge HOLDEN's opinion in holding that chapter 118, Laws of 1926, is unconstitutional, for the reasons therein stated. I think, however, that it is also unconstitutional for the further reason that the statute, in effect, prohibits an individual from engaging in a lawful occupation, and thus denies the liberty of a citizen

and violates the Fourteenth Amendment to the Constitution of the United States.

Where a business is not harmful within itself, and is not affected with any public use, I think it is not competent for the legislature to place a tax thereon so high as to prevent the business being conducted without loss to the person engaged therein. It is not competent for the legislature to so monopolize a business that only those can engage in it who can do so upon the basis of monopoly. In Illinois it has been held that an act requiring an examination in licensing persons engaged in the trade of horseshoeing is not justifiable. *Bessette* v. *People,* 193 Ill. 334, 62 N. E. 215, 56 L. R. A. 558; *People* v. *Beattie,* 96 App. Div. 383, 89 N. Y. S. 193; *In re Aubrey,* 36 Wash. 308, 78 P. 900, 104 Am. St. Rep. 952, 1 Ann. Cas. 927. Black's Constitutional Law, p. 411, after discussing certain trades that could be regulated or prohibited, says:

"But, in general, the ordinary and common trades, callings, and forms of business, which are innocuous in themselves, and have been followed in all communities from time immemorial, are not subject to interference or restraint under the pretence of police regulations, and must be free to all alike on the same terms."

*Allegyer* v. *Louisiana,* 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832, in defining the liberty of a citizen under the Fourteenth Amendment to the Federal Constitution, held as follows:

"The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned. It was said by Mr.

Justice BRADLEY, in *Butchers' Union Company* v. *Crescent City Company,* 111 U. S. 746, 762 [4 S. Ct. 652, 657 (28 L. Ed. 585)], in the course of his concurring opinion in that case, that the right to follow any of the common occupations of life is an inalienable right. It was formulated as such under the phrase 'pursuit of happiness' in the Declaration of Independence, which commenced with the fundamental proposition that 'all men are created equal, that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness.' This right is a large ingredient in the civil liberty of the citizen. Again on page 764 [658] [589] the learned Justice said: 'I hold that the liberty of pursuit—the right to follow any of the ordinary callings of life—is one of the privileges of a citizen of the United States.' And again, on page 765 [658] [590]: 'But if it does not abridge the privileges and immunities of a citizen of the United States to prohibit him from pursuing his chosen calling, and giving to others the exclusive right of pursuing it, it certainly does deprive him (to a certain extent), of his liberty; for it takes from him the freedom of adopting and following the pursuit which he prefers; which, as already intimated, is a material part of the liberty of the citizen.' It is true that these remarks were made in regard to questions of monopoly, but they well describe the rights which are covered by the word 'liberty' as contained in the Fourteenth Amendment."

In the case of *Wolff Packing Co.* v. *Court of Industrial Relations of State of Kansas,* 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280, the court had occasion to deal with a statute of Kansas, which undertook to enact laws designed to affect the liberty of the individual which is protected by the due process clause of the Fourteenth Amendment to the Constitution of the United States, and it was held that the act abridged the right of liberty of contract, and thus violated the Fourteenth Amendment to the Constitution of the United States,

in that it deprived both the employer and employee of the right to contract in reference to said business. It was therein further held that businesses clothed with a public interest justifying some public regulation are divided into three classes: (1) Those carried on under a public grant of privileges; (2) certain occupations regarded as exceptional, such as the keeping of inns, cabs and gristmills; and (3) business, the owner of which, by devoting it to public use, in effect, grants the public an interest in that use, and subjects himself to public regulation to the extent of that interest. It was further held therein that the mere declaration by the legislature that a business is affected with a public interest is not conclusive of the question whether or not its attempted regulation on that ground is justified. At page 537 of the United States Report (page 633, 43 S. Ct., page 1109, 67 L. Ed.), the court said:

"It has never been supposed, since the adoption of the Constitution, that the business of the butcher, or the baker, the tailor, the wood chopper, the mining operator, or the miner, was clothed with such a public interest that the price of his product or his wages could be fixed by state regulation. It is true that in the days of the early common law an omnipotent Parliament did regulate prices and wages as it chose, and occasionally a colonial legislature sought to exercise the same power; but nowadays one does not devote one's property or business to the public use or clothe it with a public interest merely because one makes commodities for, and sells to, the public in the common callings of which those above mentioned are instances. An ordinary producer, manufacturer or shopkeeper, may sell or not sell as he likes [citing authorities], and while this feature does not necessarily exclude businesses from the class clothed with a public interest [citing authorities], it usually distinguishes private from quasi public occupations. In nearly all the businesses included under the third head above, the thing which gave the public interest was the indis-

pensable nature of the service and the exorbitant charges and arbitrary control to which the public might be subjected without regulation. In the preparation of food, the changed conditions have greatly increased the capacity for treating the raw product and transferred the work from the shop with few employees to the great plant with many. Such regulation of it as there has been, has been directed toward the health of the workers in congested masses, or has consisted of inspection and supervision with a view to the health of the public. But never has regulation of food preparation been extended to fixing wages or the prices to the public, as in the cases cited above, where fear of monopoly prompted, and was held to justify, regulation of rates. There is no monopoly in the preparation of foods. The prices charged by plaintiff in error are, it is conceded, fixed by competition throughout the country at large. Food is now produced in greater volume and variety than ever before. Given uninterrupted interstate commerce, the sources of the food supply in Kansas are country-wide, a short supply is not likely, and the danger from local monopolistic control less than ever. It is very difficult under the cases to lay down a working rule by which readily to determine when a business has become 'clothed with a public interest.' All business is subject to some kinds of public regulation; but when the public becomes so peculiarly dependent upon a particular business that one engaging therein subjects himself to a more intimate public regulation is only to be determined by the process of exclusion and inclusion and to gradual establishment of a line of distinction. We are relieved from considering and deciding definitely whether preparation of food should be put in the third class of *quasi*-public businesses, noted above, because even so, the valid regulation to which it might be subjected as such, could not include what this act attempts. To say that a business is clothed with a public interest, is not to determine what regulation may be permissible in view of the private rights of the owner.

The extent to which an inn or a cab system may be regulated may differ widely from that allowable as to a railroad or other common carrier. It is not a matter of legislative discretion solely. It depends on the nature of the business, on the feature which touches the public, and on the abuses reasonably to be feared. To say that a business is clothed with a public interest is not to import that the public may take over its entire management and run it at the expense of the owner. The extent to which regulation may reasonably go varies with different kinds of business. The regulation of rates to avoid monopoly is one thing. The regulation of wages is another. A business may be of such character that only the first is permissible, while another may involve such a possible danger of monopoly on the one hand, and such disaster from stoppage on the other, that both come within the public concern and power of regulation.''

See, also, authorities there cited.

In *Wilby* v. *State,* 93 Miss. 767, 47 So. 465, 23 L. R. A. (N. S.) 677, this court, in discussing this proposition held that a plumbing business was one which a citizen had the right to engage in without being subjected to unreasonable and prohibitive restrictions or conditions.

The statute in the case at bar may not be unconstitutional upon its face, but the statute is unconstitutional in that it invades the constitutional rights of a citizen and denies those rights to him, and this may be developed by proof. In the present case, the bill makes a case within this principle. The allegations are confessed by the attorney-general.

I therefore concur in the conclusion that the statute is inoperative, and that the former statute continues in force.