STATE *v.* PARAMOUNT-GULF THEATRES, INC.

No. 39870          January 9, 1956          84 So. 2d 403

*Dugas Shands,* Asst. Atty. Gen., Jackson, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellee.

408

McGEHEE, C. J.

In this case the State of Mississippi by its Attorney General appeals from a final decree of the chancery court rendered in favor of the appellee, Paramount-Gulf Theatres, Inc., and against the State of Mississippi for the sum of $27,886.29, alleged to have been illegally collected from the appellee as a "chain picture show tax" under Chapter 418, Laws of 1952, Section 9079, Code of 1942, as Recompiled in Vol. 7 of the said Code, and which statute was held by the trial court to be unconstitutional as being in violation of the equal protection clause of the Fourteenth Amendment to the Federal

Constitution upon the theory that it was an arbitrary and discriminatory classification of chain picture shows for the purpose of taxation.

The statute became effective July 1, 1952, and remained in effect until May 1, 1955. The appellee sought to recover in this suit only such part of the tax as was collected by it from its picture show customers and remitted to the State Tax Commission during the first seven months of the two year and nine month period during which the statute was in effect.

The statute in question places a two percent tax on each dollar of gross revenue derived from the sale of admission to any picture show operating in the State. It then classifies operators of more than ten picture shows belonging to a single chain or group into a separate class and levies on such chain operators an additional three percent tax on each dollar of gross revenue derived from the sale of admissions to any such moving picture show "belonging to a chain or group having a total of more than ten such moving picture shows wherever situated so that the total tax on such moving picture shows belonging to such chain or group shall be five percent on each dollar so imposed * * *." Of course the tax applies only to shows in the chain or group that are operated in Mississippi.

The record discloses that the appellee operates a total of thirty-six picture shows, and that fourteen of them are situated and are operating in Mississippi. That the only other picture shows operating in Mississippi and belonging to a chain or group having a total of more than ten such moving picture shows is the Strand Enterprises, Inc., which operates seven picture shows in Mississippi and twelve picture shows outside the State. There is no contention that the tax discriminates against the appellee as applicable to it and the other chain picture show in the same classification. The complaint is that the statute in question contains an unreasonable and

discriminatory classification as between these two picture shows belonging to a chain or group of more than ten and those belonging to a chain or group of ten or less.

The "Stipulation of Facts" on which the case was heard in the trial court recites, among other things, that "for the purpose of this proceeding only, and without conceding such to be true for any purpose other than for the consideration of this particular cause, it is stipulated that the operation of chain moving picture shows results in certain advantages and/or distinctions sufficient to justify the legislature in classifying chain operations for tax purposes and that the classification of chain picture shows for tax purposes has a reasonable basis in fact."

■■■ Moreover, it is well settled that "the question of classification is primarily for the legislature, and it can never become a judicial question except for the purpose of determining, in any given situation, whether the legislative action is clearly unreasonable". 6 R.C.L. 384, quoted in the opinion on suggestion of error in Russell Investment Corp. v. Russell, 182 Miss. 385, 178 So. 815.

The opinion in Russell Investment Corp. v. Russell, supra, at page 418, further quoted from 6 R.C.L. the following: " ' * * * When the classification in a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. The courts cannot require the legislature to specify its reasons for the classification, but they will always presume that the legislature acted on legitimate grounds of distinction, if such grounds exist.' " And then said: "One who assails the classification in a statute must carry the burden of showing that it does not rest on any reasonable basis. It is presumed that the legislature in making discriminations in classifications

in statutes bases them on adequate grounds. State v. Gilmer Grocery Co., 156 Miss. 99, 125 So. 710.

"In determining whether statutes enacted by the legislature transcend the limits imposed by the federal and state constitutions the courts should proceed with the greatest possible caution; and they should never declare a statute void unless its invalidity is in their judgment established beyond reasonable doubt."

It is not contended that the provision of the statute in question which applies to a chain or group of more than ten picture shows is violative of any provision of the State Constitution; it is contended only that it violates the equal protection clause of the Federal Constitution. Moreover, it has been repeatedly held that Section 112 of the State Constitution requiring that taxation be equal and uniform is applicable only to ad valorem taxation and does not therefore apply to excise and privilege taxes. The statute in question begins in these words: "There is hereby imposed, levied, and assessed to be collected and paid as hereinafter provided, a privilege license tax * * *." In other words, the legislature has designated the tax as being one for the privilege of operating picture shows in the State which belong to a chain or group of more than ten, and the parties have stipulated as hereinbefore shown that the operation of chain moving picture shows "results in certain advantages and/or distinctions sufficient to justify the legislature in classifying chain operations for tax purposes and that the classification of chain picture shows for tax purposes has a reasonable basis in fact".

If a chain of picture shows of ten or less has advantages over the operation of one picture show, then it was for the determination of the legislature as to whether more advantages would result from the operation of more than ten picture shows belonging to a chain or group than would accrue from the operation of ten or less. The line of demarcation for the variation in the

rate of the tax must be placed at some number of shows, if we assume that the legislature has the constitutional power to classify chain operations for tax purposes.

In the case of State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 75 L. Ed. 1248, there was involved an Indiana statute imposing a chain store privilege or occupation tax graduated upward at a rate based upon the increased number of stores operated, and the statute was challenged as being unconstitutional on the ground of being arbitrarily discriminatory, it being contended by Jackson that there was no substantial difference between the operation of chain stores and individual stores. The State of Indiana defended the tax and contended that all constitutional requirements are met as long as each classification by the legislature shall apply the same rules and methods to all persons of the same class so that the law will operate equally and uniformly and all similarly circumstanced will be treated alike. The United States Supreme Court upheld the constitutionality of the Indiana statute.

In the case of Penney Stores, Inc. v. Mitchell, Attorney General of Miss., et al, 59 Fed. 2d 789, which was decided by a three judge federal district court composed of Judges Holmes, Foster and Grubbs, the court had occasion to apply the principles which had then been recently announced in the case of State Board of Tax Commissioners v. Jackson, supra, and held that the Mississippi chain store tax of an additional one-fourth of one percent upon the gross income of the business of a chain of stores of more than five being operated in Mississippi was constitutional and was not discriminatory against the Penney Stores when the tax on one to five stores, inclusive, was only one-half of one percent. The statute there in question, Chapter 90, Laws of 1930, entitled "An Act to provide for the raising of additional public revenue by tax upon the privilege to engage in certain businesses; * * *; and a tax upon the price of

admission to places of public amusement; * * *'', contained a provision ''that if any person shall operate more than five stores in this state, at or by which such property is sold, at retail, there is likewise hereby levied on, and shall be collected of, such person, an additional tax equivalent to one-fourth of one percent of the gross income of the business of all such stores. * * *''.

Penney Stores, Inc., was operating more than five stores in Mississippi, and sought to enjoin the collection of this chain store tax which was one-fourth of one percent higher on those operating more than five stores than the one-fourth of one percent levied on operators of five or less stores, thus making the chain pay one-half of one percent. A temporary restraining order and an interlocutory injunction were issued prior to the decision of the United States Supreme Court in the Jackson case, supra.

The three judge district court upheld the constitutionality of the statute in question under the authority of the Jackson case. In a very able and well written opinion by Judge E. R. Holmes it was said, among other things, that: ''The matter of classification is not for expert witnesses, but for the legislature, primarily and conclusively, unless a state of facts reasonably can not be conceived to sustain it. The essential facts of single ownership of multiple stores are the same on this record as in the Indiana (Jackson case) and the North Carolina cases. * * *.

''The plaintiff contends that the Act assailed, determined by its practical effect, is not a privilege or occupation tax, but is a tax upon gross sales. * * * We find nothing in the Act, or in the factual conditions under which it operates to indicate that it is not, as its name implies, a tax upon the privilege of pursuing certain businesses. * * *

''In North Carolina a merchant with one store is exempt from any tax. In Indiana he pays $3.00. In Mis-

sissippi the statute draws the line between five and six, and the owner of less than six pays an amount equal to one-fourth of one percent of his gross sales; the owner of more than five, one-half of one percent on all such stores. * * * We have seen that at some point in number a change takes place in the basic characteristics of all the stores. After the change there are differences in organization, management, and type of business transacted.''

In the case of Great Atlantic & Pacific Tea Co. v. Grosjean, etc., 301 U. S. 412, 81 L. Ed. 1193, there was involved a Louisiana statute which created a chain store tax, that had been designated by the legislature as a privilege tax, and which levied upon two or more stores, not in excess of five, $15.00 upon each of such stores; upon each store in excess of five, but not exceeding ten, $25.00; and the amount increased in brackets for additional stores, the last bracket embracing stores in excess of fifty, upon each of which the tax was $200.00. In the opinion it is stated that ''there are fifteen additional paragraphs progressively increasing the rate per store in Louisiana of larger chains, the last fixing the rate for a store belonging to a chain of more than five hundred at $550.00.''

The Court further said that: ''The exaction is an occupation or license tax. The subject is the conduct of a business within Louisiana. Without contravening the equal protection clause of the Fourteenth Amendment a state may separately classify for taxation the conduct of a chain store, and may increase the rate in proportion to the increase in the number of stores within the state, since the opportunities and powers of a chain store operator become greater with the growth of the number of units maintained.''

In the instant case that which makes the rate go up or down is the fact of whether or not the chain store operator has more than ten stores in its chain or group

or has ten or less stores therein. The volume of admissions to the show sold does not affect the rate of the tax on each dollar of revenue, but merely affects the total amount of tax collected by the chain store operator from its customers and paid into the state treasury.

The case of Liggett v. Lee, 288 U. S. 517, 77 L. Ed. 929, involved a statute of Florida which levied a tax upon one store of $5.00, on two stores or more, but not exceeding fifteen, $10.00; for sixteen through and including thirty stores the rate of $15.00 for each additional store, and the statute was held unconstitutional by the Florida Supreme Court. The decision was reversed by the United States Supreme Court, which held the statute to be constitutional, saying: ''The decision in the Jackson case was based not upon any single feature of chain store management, but upon the ultimate fact of common knowledge, illustrated and emphasized by the evidence, that the conduct of a chain of stores constitutes a form and method of merchandizing quite apart from that adapted to the practice of the ordinarily individually operated small store or department store; and that the difference between an integrated and a voluntary chain is fundamental. * * *

''* * * The legislature may make the distinction the occasion of classification for purposes of taxation. * * *

''* * * As we have held, graduation of the tax according to the number of units operated cannot be said to be so unreasonable as to transcend the constitutional powers of the legislature. The addition of a store to an existing chain is a privilege, and an increase of the tax on all the stores for the privilege of expanding the chain cannot be condemned as arbitrary.''

The appellee strongly urges that the case of Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 79 L. Ed. 1054, is decisive against the constitutionality of the statute here involved. In that case the State of Kentucky had enacted a statute imposing an annual license tax upon

every retail merchant for the opening, establishing, operating or maintaining of any store or stores, to be determined by computing the tax on the amount of gross sales as follows: "One-twentieth of one percent of the gross sales of $400,000.00 or less, two-twentieths of one percent on the excess of the gross sales over $400,000.00 not exceeding $500,000.00; * * *."

The graduations then increased on the sales on to an excess of one million dollars with accompanying graduations as to the percentage of the tax. In other words, in that case the *rate* of the tax was increased by the amount of goods sold, whereas in the instant case the rate of the tax does not go up or down according to the volume of the sale of tickets to picture shows belonging to the chain or group of more than ten. The rate on the sales of admissions to such shows remains five percent whether $10,000.00 or $50,000.00 worth of tickets are sold during any given period.

Moreover, in the Stewart Dry Goods Co. case, supra, the court stated: "In several recent cases we sustained the classification of chain stores for taxation at rates higher than those applicable to single stores, and graduated upward on each store as the total number of units in one ownership increases. We found this classification reasonable because of advantages incident to the conduct of multiple stores and obvious differences in chain methods of merchandising as contrasted with those practised in the operation of one store. The instant cases present a classification of quite another kind. The Kentucky statute ignores the form of organization and the method of conducting business. The taxable class is retail merchants, whether individuals, partnerships or corporations; those who sell in one store or many; those who offer but one sort of goods and those who through departments deal in many lines of merchandise. The law arbitrarily classifies these vendors for the imposition of a varying rate of taxation, solely by refer-

ence to the volume of their transactions, disregarding the absence of any reasonable relation between the chosen criterion of classification and the privilege the enjoyment of which is said to be the subject taxed. It exacts from two persons different amounts for the privilege of doing exactly similar acts because the one has performed the act oftener than the other. We hold the act unconstitutional, and reverse the judgment."

We have carefully considered the many other cases cited in the excellent briefs filed on behalf of each of the parties, but on the basis of the decisions hereinbefore discussed we have concluded that the classification here in question was within the constitutional power of the legislature to make, and that the provision of the statute imposing the additional three percent on each dollar of gross revenue derived from the sale of admission to any moving picture show belonging to a chain or group of more than ten shows does not violate the equal protection clause of the Fourteenth Amendment to the Federal Constitution, this being the only provision of the statute attacked as unconstitutional, and this being the only constitutional provision alleged to have been violated.

As stated in the outset, the suit is to recover taxes paid into the state treasury by the appellee, Paramount-Gulf Theatres, Inc., and the appellee has stipulated that its records "contain no evidence from which to identify any of its patrons purchasing tickets to picture shows owned and operated by Paramount-Gulf Theatres, Inc., for the period beginning July 1, 1952, and ending January 31, 1953,—the seven month period in question, and the appellee has further stipulated that "each person purchasing a ticket paid the total of the admission, federal taxes, and state taxes" and further that in the event this claim for refund should be allowed the appellee intends to retain the amount thereof as its own.

Therefore, we are of the opinion that in any event the appellee would not be entitled to the refund

sued for, since it was merely the conduit through which the tax was paid into the state treasury by the purchasers of the picture show tickets. To allow the appellee to recover the tax would violate the doctrine against "unjust enrichment" in view of the facts stipulated into the record as aforesaid, since it did not pay any part of the tax sought to be recovered, but merely collected the tax from its customers and remitted the same into the state treasury. We think that the instant case is distinguishable from the case of Independent Linen Service v. Stone, 192 Miss. 832, 6 So. 2d 110. In that case the Independent Linen Service evidently knew from its records to whom its linens had been rented, and the court could not have presumed that the Independent Linen Service would retain the sum refunded instead of paying it to those from whom it had been collected, whereas in the instant case it is agreed that the appellee, Paramount-Gulf Theatres, Inc., has no records whereby it can determine from whom it collected the chain picture show tax, and that it has no intention of refunding the same to the patrons of the show who paid the same in the event the $27,886.29 is refunded to it.

The decree of the trial court granting the refund of $27,886.29 to the appellee is reversed and a judgment rendered here in favor of the appellant to the effect that the appellee is not entitled to such refund.

Reversed and judgment here for the appellant.

All justices concur.