322 So.2d 457 (1975)
Robert G. SHARPE, Motor Vehicle Comptroller, State of Mississippi
v.
STANDARD OIL COMPANY.
No. 48314.
Supreme Court of Mississippi.
October 13, 1975.
Rehearing Denied December 8, 1975.
Daniel, Coker, Horton, Bell & Dukes, John B. Clark, Roger C. Clapp, Jackson, for appellant.
Watkins & Eager, Cox & Dunn, Ltd., Jackson, for appellee.
Before RODGERS, SUGG and BROOM, JJ.
*458 SUGG, Justice:
This case involves the validity of a tax of ten cents per gallon assessed by the Motor Vehicle Comptroller under Mississippi Code Annotated section 27-55-313 (1972) on diesel fuel sold by Standard Oil Company to Mid-State Paving Company for use in the performance of State Highway Commission contracts. The Comptroller's assessment was reversed by the Chancery Court for the First Judicial District of Hinds County, Mississippi, on the ground that the statute taxes only diesel fuel used in motor vehicles.
The question is whether the tax applies only to diesel fuel used in motor vehicles by a contractor in the performance of state contracts, or whether the tax applies to all diesel fuel used by a contractor in the performance of state contracts regardless of the specific on-the-job uses made of the fuel.
Mid-State is a Mississippi corporation primarily engaged in asphalt paving work on the highways of the State of Mississippi and its political subdivisions. The asphalt used by Mid-State is produced by mixing and processing various materials in portable asphalt plants usually set up near the construction site. One of the materials is sand which must be dried by the application of heat to extract any moisture. The fuel generally used in the process is diesel fuel which falls within the definition of "other motor fuel" under Mississippi Code Annotated section 27-55-303(d) (1972).[1] A tax of ten cents per gallon is levied upon the distributor of other motor fuel by the first paragraph of section 27-55-313.
A tax at the rate of ten cents per gallon is hereby levied upon any distributor of other motor fuel for the privilege of engaging in the business of selling or delivering other motor fuel to a retail dealer, user, or any other person for use in propelling motor vehicles on the highways of this state and/or for the privilege of engaging in the business of selling and delivering other motor fuel to any other person who purchases or uses other motor fuel in performing contracts for construction, reconstruction, maintenance or repairs, where such contracts are entered into with the State of Mississippi, any political subdivision of the State of Mississippi, or any department, agency, or institution of the State of Mississippi or any political subdivision thereof, if the first notice of publication to bidders on such contract has been given after September 1, 1966.
Mid-State was of the opinion that the tax did not apply to diesel fuel used to process asphalt in the performance of its contracts with the Highway Commission. Accordingly, it did not pay Standard the tax on the fuel used in processing asphalt, but agreed to indemnify Standard for any of the tax ultimately paid by Standard. The Comptroller maintained that section 27-55-313 levied the ten cents per gallon tax on diesel fuel used by a contractor in the performance of state contracts regardless of the specific on-the-job uses of the fuel. He assessed taxes and penalties in the amount of $198,543.26 against Standard for diesel fuel sold by it to Mid-State from January 1, 1970, through March of 1972. This assessment was later confirmed by the Comptroller after a hearing. On appeal to the Chancery Court for the First Judicial District of Hinds County the assessment was reversed, the chancellor holding that the taxing statute taken as a *459 whole evinced a legislative intent to tax only motor fuel used in internal combustion engines.
Mississippi Code Annotated section 27-55-313 (1972) is clear and unambiguous on its face, addressing itself to two classes of users of other motor fuel. The first part of the section is designed to apply to those persons who use other motor fuel in propelling motor vehicles on the highways of the state. The second part is not so limited, being addressed simply to "any other person" purchasing or using other motor fuel in the performance of state contracts. Unlike the terms "retail dealer" and "user" found in the first part of section 27-55-313, "person" is not by definition limited to one who uses other motor fuel only in motor vehicles. As defined in the statute, "use" also contemplates uses other than motor vehicle use, hence the definition:
(e) "Use" means, in addition to its ordinary meaning, the receipt of other motor fuel by any person into the fuel supply tank of a motor vehicle or into a receptacle from which other motor fuel is supplied by any person for his own or other motor vehicles. (Emphasis supplied).
The statute means what it says: All of the other motor fuel purchased or used by a person in the performance of state contracts is subject to the ten cents per gallon tax.
In spite of this language Standard maintains, and the chancellor held, that the section does not contemplate taxing fuel used to heat asphalt to be used in the performance of a state contract because other fuel taxing sections either tax fuel used only in vehicles or exempt fuel used as a processing agent in manufacturing. See Mississippi Code Annotated sections 27-57-315, -327(g) (1972). Reliance is also placed upon two opinions by the Attorney General relative to the tax.
We are not persuaded by the argument for it overlooks the unequivocal language of the statute (XX-XX-XXX) and its legislative history. At the hearing before the Comptroller, Mr. Adlia Morgan, Director of Petroleum Taxes for the Motor Vehicle Comptroller, testified that the language dealing with contractors in the current diesel law (section 27-55-313) came about through a 1958 amendment to the gasoline act (section 27-55-1 et seq.). Mr. Morgan said that prior to 1958 many contractors were including in their bids with the Highway Commission the state excise tax on gasoline, and later securing a refund of the tax on the gasoline used for non-highway purposes. The practice was known as "double dipping" because the contractors would recover the tax twice. In an effort to stop this practice, Mr. Morgan testified that he helped draft an amendment to the refund gasoline section designed to prevent contractors from claiming a refund on gasoline used in the performance of a state contract. The amendment made no distinction in the specific job site use of gasoline, but simply provided that:
[N]o refund shall be allowed to any person, firm or corporation who may purchase, sell or use gasoline in performing contracts for construction, reconstruction, maintenance or repair, where such contracts are entered into with the State of Mississippi or with any department, agency or institution of the State of Mississippi, or with any political subdivision of the State of Mississippi, or with any department, agency or institution of such political subdivision. (Mississippi Laws 1958, chapter 180, section 11).
Mr. Morgan further testified that in 1966 the "double dipping" provision in the gas act of 1958 was brought forward into the diesel tax law, the difference being that the gasoline act involved a refund, but the diesel act involved an exemption:
Provided, further, no exemption shall be allowed to any person, firm or corporation who may purchase, sell or use diesel fuel or kerosene in performing contracts for construction, reconstruction, *460 maintenance or repair, where such contracts are entered into with the State of Mississippi or with any department, agency or institution of the State of Mississippi, or with any political subdivision of the State of Mississippi, or with any department, agency or institution of such political subdivision. (Mississippi Laws 1966, chapter 645, section 11).
The effect of the 1966 amendment was to tax diesel fuel when used by a contractor in the performance of a contract with the state or any of its political subdivisions. Section 7 of chapter 54 of the Laws of 1969 (codified at Mississippi Code Annotated section 27-55-313 (1972)) continued taxing diesel fuel so used. Compare Mississippi Laws 1966, chapter 645, section 11, with Mississippi Laws 1969, chapter 54, section 7.
Although it is not necessary to determine the intent of the legislature as to section 27-55-313 because the act is plain and unambiguous, we find that the legislative intent was to coordinate the laws governing gasoline and other motor fuel used by contractors in the performance of state contracts and subject all of that fuel to the ten cents per gallon fuel tax regardless of the specific on-the-job uses.
Standard next contends that we should adopt the construction of the statute as set forth in an opinion of the Attorney General. The March 15, 1971, opinion of the Attorney General simply held that oil used to process asphalt is exempt from the one cent tax of Mississippi Code Annotated section 27-57-315 (1972) because of the "processing agent" exemption of section 27-57-327(g). This opinion was not addressed to the disputed ten cents tax of XX-XX-XXX nor did it refer to the use of other motor fuel by a contractor performing a state contract. Although the January 16, 1973, opinion by the Attorney General held that the ten cents per gallon tax was not due where fuel was used to process asphalt by a contractor having a state contract, the opinion contains two fatal weaknesses. It leaves out the critical words "to any other person who purchases or uses other motor fuel" found in section 27-55-313, and lifts the "processing agent" exemption from the one cent tax of section 27-57-315 and inserts it into the ten cents tax of section 27-55-313.
Standard's final contention involves a constitutional challenge. The argument is that to subject diesel fuel to the tax, when used as a heating agent, is discrimination violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution because other heating fuels, notably propane, are not subject to the disputed tax. The tax, it is urged, would increase the cost of diesel fuel to such proportions that Standard's business of selling diesel fuel for use as a heating agent would be destroyed in the same manner as the business in Riley v. Ayer and Lord Tie Co., 147 Miss. 105, 113 So. 214 (1927). In Riley a privilege tax of twenty-five cents per thousand feet of lumber treated by creosoting plants was held to violate the equal protection clause because the taxpayer's whole business was destroyed by the tax, other like businesses not being so taxed. Riley is not dispositive of the constitutional question before us, for while the entire production of the creosoting business was taxed in that case, only one specific use of one specific product is being taxed in the instant case: The use of diesel fuel by a contractor to heat asphalt to be used in the performance of a state contract.
Subtle distinctions are, of course, not controlling on this constitutional matter. The correct inquiry is whether the classification is related to a legitimate state interest and, if so, whether the means chosen to effectuate that interest are reasonable. Kahn v. Shevin, 416 U.S. 351, 355, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); Ohio Oil Co. v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775 (1930); F. *461 S. Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920); State v. Paramount-Gulf Theaters, Inc., 226 Miss. 404, 84 So.2d 403 (1956); Southern Package Corp. v. State Tax Commission, 174 Miss. 212, 164 So. 45 (1935). Nowhere is the power of classification accorded more latitude than in the field of taxation. While subject to the demands of the Fourteenth Amendment, "that Amendment imposes no iron rule of equality...." Ohio Oil Co. v. Conway, supra, 281 U.S. at 159, 50 S.Ct. at 314, 74 L.Ed. at 782. Accord Allied Stores of Ohio, Inc., supra, 358 U.S. at 526, 79 S.Ct. at 440, 3 L.Ed.2d at 484; New York Rapid Transit Corp. v. New York, 303 U.S. 573, 578, 58 S.Ct. 721, 82 L.Ed. 1024 (1938). The state may tax certain kinds of property yet exempt others. Heisler v. Thomas Colliery Co., 260 U.S. 245, 255, 43 S.Ct. 83, 67 L.Ed. 237 (1922).
The United States Supreme Court has addressed the instant classification problem on several occasions. Heisler, supra, concerned a state taxing statute which levied a tax on anthracite coal production. Suit was brought alleging that the tax violated the equal protection clause because anthracite coal was taxed while bituminous coal was not taxed. The Court held that the natural difference between the two coals constituted a "just basis for their different classification," and accordingly, upheld the tax. 260 U.S. at 257, 43 S.Ct. at 85, 67 L.Ed. at 242. Lake Superior Consolidated Iron Mines v. Lord, 271 U.S. 577, 46 S.Ct. 627, 70 L.Ed. 1093 (1926) involved a like tax levied upon ore lands but not upon other producing lands such as quarries and forests. Citing Heisler, supra, the Court affirmed the tax classification on the basis of the differences in the natural resources. 271 U.S. at 582, 46 S.Ct. at 629, 70 L.Ed. at 1101. In Broad River Power Co. v. Query, 288 U.S. 178, 53 S.Ct. 326, 77 L.Ed. 685 (1933), a suit was filed contesting the validity of a South Carolina law that taxed the production of electricity by hydroelectric power but not the production of electricity by oil or internal combustion engines. Again citing Heisler, supra, the Court held that the existence of comparatively few internal combustion electric plants was sufficient reason for creating the tax classification. 288 U.S. at 179-80, 53 S.Ct. at 327, 77 L.Ed. at 686. See also Allied Stores of Ohio, Inc., supra.
The foregoing demonstrates that no constitutional difficulties are raised by the fact that, within the tax classification of "other motor fuel [used] in performing contracts ... with The state," the tax is applied to diesel fuel used by a contractor as a heating agent but not to propane used as a heating agent. The record shows that the state interest behind the tax is the prevention of "double dipping." The means chosen to halt this practice is the termination of all refund and exemption privileges for contractors using gasoline and other motor fuel in the performance of state contracts. In this way the contractors may recover their fuel tax cost but once through the contract bid and not a second time by way of a refund or exemption.
Finally, apart from the pronounced state interest in ending "double dipping," a more basic reason may be relied upon to sustain the discrimination between propane and diesel, specifically the inherent differences between propane and diesel fuel. These differences were testified to by a witness for the Comptroller and form in and of themselves a sufficient basis for the tax classification. Heisler, supra, 260 U.S. at 257, 43 S.Ct. at 85, 67 L.Ed. at 242; Allied Stores of Ohio, Inc., supra, 358 U.S. at 528, 79 S.Ct. at 441, 3 L.Ed.2d at 486.
We, therefore, reverse the decree of the chancery court and reinstate the order of the Motor Vehicle Comptroller.
Reversed and order of the comptroller reinstated.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, ROBERTSON and WALKER, JJ., concur.
NOTES
[1] Other motor fuel is defined by § 27-55-303 (d) as follows:

"Other motor fuel" means all combustible gases and liquids used or usable for the generation of power for propulsion of motor vehicles except that it does not include gasoline as defined in the gasoline tax law nor does it include liquefied compressed gas.
Gasoline and liquefied compressed gas are separately defined and taxed by other statutes. See Mississipi Code Annotated §§ 27-55-1 et seq.; 27-59-1 et seq. (1972).