ALFRED WILBY v. STATE OF MISSISSIPPI.

[47 South. 465.]

1. PRIVILEGE TAXES. *Licenses. Plumber. Code 1906, § 3854.*

Code 1906, § 3854, imposing a privilege tax on every person "doing a plumbing business," does not apply to a plumber working by the day or taking contracts to be performed by his own labor; the tax is due only from a person, firm or corporation taking contracts to be performed by the labor of other plumbers.

2. SAME. *Construction.*

Laws imposing privilege taxes should be strictly construed.

3. SAME. *Words and phrases. Liberty.*

Liberty, in its broad sense, implies the right to follow any of the ordinary callings of life, without being unduly trammeled.

FROM the circuit court of Forrest county.

HON. WILLIAM H. COOK, Judge.

Wilby, appellant, was tried and convicted of "doing a plumbing business" without having paid a privilege tax for so doing, and appealed to the supreme court. The facts of the case are fully stated in the opinion of the court.

*R. S. Hall,* for appellant.

The peremptory instruction asked for by the appellant should have been granted. The record fails to disclose that appellant was in the year 1907 engaged in the "plumbing business." Code 1906, § 3854 reads: "On each individual, firm, or corporation doing a 'plumbing business' in cities and towns of 10,000 or more inhabitants where they have waterworks and sewerage." The section means what it says when the words "doing a plumbing business" are used. It certainly does not mean to tax an individual working at the plumbing trade. It certainly was not the intention of the legislature to levy a tax upon honest toil and labor; it undertook to tax those who "set

up shop" carry stock and carry on a "plumbing business." I do not think that the time has yet arrived in this good state when our courts will hold that a man must pay a privilege tax to do honest toil by which to make bread for himself and family, even though he may receive as much as $5 per day for his work and toil.

This court has wisely interpreted similar statutes as the one now under construction in which the privilege tax is involved. *City of Jackson v. Newman,* 59 Miss. 385; *Lynch v. State,* 78 Miss. 347, 29 South. 76; *Bell v. Kerr,* 80 Miss. 177, 31 South. 708. In the opinion rendered in the last decision Justice Calhoon of this court speaking of the privilege tax statute says: "This is penal and must have strict construction." *Carney v. Hamilton,* 89 Miss. 747, 42 South. 378.

*George Butler,* assistant attorney general, for appellee.

The contention of appellant that because he had no regular place of business and did not employ men to do the work he was not in the plumbing business will not stand the test. The law does not regulate the licence upon the volume of the business done, but upon the size of the city. The individual who contracts and does his own work in a given city pays the same tax as an individual or firm who contracts and employs a dozen men to perform the actual labor, and one is as much liable for the tax as the other. Whether the business is conducted on a large or small scale, whether materials are bought for cash or credit or shipped, released or with bill of lading attached, or whether the manual labor is performed by one man or ten men does not affect the tax.

The question is "Was he engaged in plumbing on his own responsibility, or as a journeyman?" He of course was not liable for the tax while employed as a journeyman by the Cook Plumbing Company, but when he set up business in his own right the liability at once attached.

Argued orally by *R. P. Willing,* for appellant, and by *George Butler,* assistant attorney general, for appellee.

MAYES, J., delivered the opinion of the court.

Code 1906, § 3854, in the chapter on "Privilege Taxes," following a preceding section levying a privilege tax on occupations, callings, etc., provides that: "On each individual, firm or corporation doing a plumbing business in cities or towns of ten thousand or more inhabitants, where they have waterworks and sewerage, $50. Same, in cities and towns of less than ten thousand and more than five thousand, $25. In all cities and towns where they have waterworks, $10.". Alfred Wilby, the appellant, is a practical plumber, living in the city of Hattiesburg, and working at his trade for a livelihood. One Hanna was engaged in the barber business at Hattiesburg, and, desiring to have certain plumbing work done in his shop, employed Wilby to do the work, agreeing to pay therefor the sum of $240. Wilby did the work for Hanna, procuring the material, getting one Batson and Hanna to secure the purchase price, used in the work. It also appears that Wilby did some work for Batson. It does not appear from this record that Wilby was engaged in the business of making plumbing contracts and employing others to do or assist him in doing the work. He had no established place of business in which he kept plumbing supplies for the purpose of furnishing the material to carry out contracts. He was merely a practical plumber, doing such work as he obtained to do himself, performing his own labor, maintaining no bureau for the purpose of obtaining contracts and employing others to do the work or to assist him in doing it, but was simply engaged in making a living by working at his trade from day to day, taking such contracts and doing such work in this line as he found to do. This constitutes the substantial facts. of this case.

While so engaged, the sheriff of the county demanded of him a privilege tax under the section of the Code above referred

to. The city of Hattiesburg has twenty thousand inhabitants; the tax, under these circumstances, being $50. Wilby declined to pay same and on the 1st day of November, 1907, an indictment was returned by the grand jury, charging him with unlawfully conducting a plumbing business in the city of Hattiesburg, without first paying the privilege tax, etc. At the conclusion of the testimony the defendant asked a peremptory charge acquitting him; but the court declined to give this instruction, whereupon he was convicted, and has appealed. Since the case is to be decided upon the refusal of this instruction, it is not necessary to enter into any discussion of the other instructions in the case.

We have no difficulty in reaching the conclusion, from the facts presented here, that Code 1906, § 3854, has no application to this case. It applies only to an individual, firm, or corporation making contracts and completing them by the employment of other plumbers to do the work. It has no application to any individual plumber working by the day or taking contracts for himself alone. A plumber cannot be said to be "doing a plumbing business," within the meaning of the act, when he merely works at his trade himself and is not engaged in making plumbing contracts to be farmed out to others or completed by the employment of other plumbers. We cannot assent to the proposition that it was the intention of the legislature to impose so large an occupation tax upon labor, on the right which a man has by his brawn and muscle, without any other capital being invested, to earn his daily bread by the sweat of his own brow; but the tax was intended by the legislature to be imposed upon those engaged in the business of taking contracts and making profit by the employment of the labor of others to complete their contracts. Any other construction of this statute would tend to build up a monopoly in this line of business, which is hateful to the law and the public, and force journeymen to become mere employees of such as are able to pay the tax. Such was never the intention of the legislature.

Such a law would be unjust and oppressive in its operation on the journeymen, and pernicious in its effect on the general public, as it would force out of competition all but the employers of such labor.

Let it be noted to the credit of this state that legislation of the character under discussion, which cannot be too strongly condemned, made its first appearance in the laws of 1904. See Laws 1904, p. 72, c. 76. We find the predicate for section 3854 in that act for the first time, and in the same act we find a companion act, being section 20, and providing that a privilege tax of $60 shall be paid by "each individual, firm, or corporation doing a contracting business in cities of over ten thousand inhabitants, when the cost of any one house or building erected by such individual, firm, or corporation exceeds three thousand dollars." This section in relation to contractors was brought forward in the Code of 1906, becoming section 3793. But in re-enacting it another section was also added, providing that where the building contracted for was less than $3,000, but more than $750, a privilege of $20 should be paid. Not content with forcing a builder only contracting to build a house costing $750 to pay a privilege of $20, the inspirers of this law procured another amendment by the legislature of 1908, which is Laws 1908, p. 57, c. 73, § 4, whereby the amount of the privilege tax to be paid is not determined by the cost of construction of the building contracted for, but by the number of men employed at any one time. Thus, by section 4, the firm or corporation must pay a privilege of $60 when the number of men employed at any one time shall be ten or more, if it be in a city of ten thousand inhabitants or more; and by a succeeding section, if the number of men employed be one or more, and not more than ten, a privilege of $20 should be paid. Thus the evil has grown, and this species of legislation has progressed from 1904 to 1908, until it is now the law, if one makes a contract to build a coal house or a chicken coop, and employ another to help him, he must first pay a privilege of $20. We cite

.this act in relation to contractors merely to emphasize the tendency of this legislation. The end and aim of the promoters is not for the genuine purpose of creating a revenue for the state, but to drive out of business the competition of small contractors who are unable to pay the tax. If this were not the purpose of the legislation, the legislature would long ago have received strong protest.

The business of plumbing is an honorable and necessary one. So is that of a contractor. The law looks on both of these occupations with favor, not with disfavor. This being the case, why should a tax of $50 be levied on the plumber for the right to labor, and a tax of $10 on the lawyer, the dentist, or other professional man? The answer is easy. It was done to make it possible to monopolize the business. In our research we have found no state with a law similar to this. Some states have laws regulating the plumbing business, but no such law as the section under discussion. These things have crept into the law under the guise of privilege taxes, but in reality their purpose is very different. While this evil is yet in its infancy the attention of the legislature should be sharply directed to it and such legislation checked. Laws of this nature approximate an abridgment of the liberty of the citizen guaranteed to him by the fourteenth amendment of the constitution of the United States, and should receive the strictest construction. Liberty, in its broad sense, must consist in the right to follow any of the ordinary callings of life without being trammelled. In the case of *State v. Smith,* 42 Wash. 237, 84 Pac. 851, 5 L. R. A. (N. S.) 674, 114 Am. St. Rep. 114, 7 Am. & Eng. Ann. Cas. 577, in discussing the validity of an act passed by the legislature of the state of Washington, entitled "an act to regulate plumbing in cities having a population of ten thousand inhabitants or over, providing for the licensing of persons to carry on the business and work of plumbing, creating a board of plumbing examiners, providing a penalty for the violation thereof," etc., the court said, after declaring the act unconstitutional: "The

right to follow any of the common occupations of life is an inalienable right. It was formulated as such under the phrase 'pursuit of happiness' in the declaration of independence. It commenced with the fundamental proposition that all men are created equal; that they are endowed by their Creator with inalienable rights; that among these are life, liberty, and pursuit of happiness. This right is a large ingredient in the civil liberty of the citizen." Again the court says: "We are not permitted to inquire into the motives of the legislature, and yet why should the court blindly declare that public health is involved, when all the rest of mankind know full well that the control of the plumbing business is the sole end in view."

We merely quote from the above opinion to show that acts of a similar nature are being frowned upon by all courts as tending towards a deprivation of rights and aimed at creating monopolies. Legislation of this kind is on the increase. It is stealing its way into the statutes for the ostensible purpose of raising revenue for the state, when in truth and in fact the only purpose of the promoters of such legislation is to control the business to which it is directed, to shut out competition, create a monopoly, and force those unable to pay the tax and possessing a knowledge of the business to look to the ones in control of the monopoly for employment. This is not only unjust to the laborer, but it is equally wrong to the public. There is just as much reason to require a $50 privilege tax of a bricklayer, or a carpenter, or a wood chopper, or a painter, or a farm laborer, as there is to require it from a plumber.

*Reversed and remanded.*