HUDSON, TAX COLLECTOR, *et al. v.* STUART.

(Division B. Jan. 16, 1933. Suggestion of Error Overruled Feb. 27. 1933.)

[145 So. 611. No. 30434.]

340

**W. W. Pierce,** Assistant Attorney-General, for the appellant.

**J. Morgan Stevens** and **Harry M. Bryan,** both of Jackson, Amici Curiae.

Hannah & Simrall, of Hattiesburg, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee is a farmer and an operator of a commercial truck. He lives on and works his small farm, but utilizes all his spare time in hauling pine stumps, pine knots, and other pine light wood to the reduction plants in the city of Hattiesburg, and also in hauling cross-ties, pine poles, piling, etc., to a creosoting plant located in the same city. In doing so, he uses the public highways, and often for

trips exceeding twenty-five miles. He operates a truck with a two-wheel semitrailer, and habitually carries a load of approximately six tons. He does not confine himself to carrying his own forest products, but does so for others for hire. Under the provisions of chapter 135, Laws 1932, appellee is made liable for an annual privilege tax of three hundred dollars for the operation on the public highways of his truck and trailer; and he filed his bill in the chancery court to enjoin the enforcement of said statute against him because of the alleged reasons which will appear in the subsequent course of this opinion. His bill was sustained, the collection of the tax was enjoined, and the tax collector appeals to this court.

The general situation to which the statute in question is addressed may be described by a paraphrase of the language used by the court in Continental Baking Co. v. Woodring (D. C.), 55 F. (2d) at page 350, and in the same case, 286 U. S. at page 364, 52 S. Ct. 595, 76 L. Ed. 1155: The state of Mississippi has constructed at great expense a system of improved highways. These have been built in part by special road districts, in part by general ad valorem county road taxes, and in part by a tax on gasoline sold in the state and by license fees exacted of all resident owners of automobiles. These public highways have become the roadbeds of transportation companies and of the operators of commercial trucks which are actively competing with railroads which provide their own roadbeds and which pay enormous annual taxes to the state and its subdivisions; and this competition has become so serious that, unless legislative intervention shall be made operative and effective, the time is to come when the railroads can no longer pay the enormous tax bills which are exacted of them, and indeed the day would eventually arrive when the railroads will either have to be abandoned or else operated in part by the aid of general taxation. The public highways are

being pounded to pieces by these great trucks which combining weight with speed are making the problem of maintenance well-nigh insoluble. The highways are public property, and the Legislature but voiced the sentiment of the entire state in deciding that those who daily or more or less constantly use the highways for commercial purposes shall pay an additional tax. We are advised that all the states of the Union excepting five have passed statutes to regulate such special use of their highways and to exact special compensation therefor.

The Legislature, for the protection of the highways of the state and to prevent the wear and hazards due to excessive size of vehicles and weight of load, may altogether prohibit the use on the public roads of vehicles and loads of such size as will destroy the roads or break down the bridges, Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167; and it is settled by numerous decisions that, as to vehicles and loads which do not destroy the roads and bridges but yet severely wear them and impose additional burdens of maintenance upon them, the state may demand compensation for the special facilities it has provided, in addition to the power of regulating the use of its highways to promote the public safety. The amount of the charges and the method of collection are for the Legislature to determine, so long as they are reasonable and conform to some fair and practical standard. Continental Baking Co. v. Woodring (D. C.), 55 Fed. (2d) 347; Id., 286 U. S. 352, 52 S. Ct. 595, 76 L. Ed. 1155. It follows that the state may graduate the compensation demanded according to the weight of the vehicle and the load carried. And the state may make the classifications and exemptions hereinafter mentioned, as well as others not here involved.

With the general problem stated, with which the Legislature had to deal, and with the foregoing general statement of the powers of the Legislature in the premises,

we come in the light thereof now to examine the main contention of the appellee, to-wit, that the imposition of a three hundred dollar per annum tax on him for the use of the highways by his truck carrying a load of six tons is unreasonable, prohibitive, and confiscatory as applied to appellee, because it is not at present possible for him to make in hauling the wood products mentioned more than three hundred dollars per year, and that the imposition of this charge upon him prohibits him from engaging in an honest and useful business. The principle pertinent to this particular question is that "the constitutionality of a statute cannot be tested by isolated cases; . . . it must be tested by its general application to the classes affected, and not to certain individuals belonging to such classes. Exact equality is not possible. Practical equality is constitutional equality. The human mind has not yet been able to devise any scheme of taxation which will operate with unerring certainty and equality to all situations that may arise." Continental Co. v. Woodring (D. C.), 55 Fed. (2d) 347, 351. The constitutional validity of a charge made for the privilege of the use of public property obviously cannot be tested by the inquiry whether the particular individual or a number of individuals similarly engaged can in the particular business make enough to pay the compensation demanded. Let us suppose that appellee, instead of hauling waste pine wood, were engaged in hauling common soil, or worthless iron junk, or some other property which would be so nearly of no value upon delivery and at the place of delivery that it would not pay the costs of the gasoline used in the transportation, would it be said that a charge for the use of the public highways could not be imposed at all upon him and that so to attempt would be unconstitutional? The answer to this question must be in the negative, otherwise the power to demand compensation for the use of the public highways for com-

mercial purposes would disappear or be seriously crippled, for always some person hauling some particular product or property would be found to be unable to make expenses in so doing, because of the worthlessness or low value of the property thus handled, not to mention other elements which enter into the result that some individual or individuals cannot profitably operate and pay the charges demanded. The citations, Wilby v. State, 93 Miss. 767, 47 So. 465, 23 L. R. A. (N. S.) 677, and Riley v. Ayer & Lord Tie Co., 147 Miss. 105, 113 So. 214, relied on by appellee, deal with privilege taxes imposed upon persons who use no public property or facility, and hence are inapplicable here.

Appellee contends that the various exemptions or partial exemptions permitted to other users of the public highways make the statute unconstitutional, because arbitrary and discriminatory; and appellee calls particular attention to the following: That steel-tired vehicles operated by animal power are entirely exempt, and that passenger automobiles are required only to pay the ordinary or lower tag license tax, although the bill alleges, contrary to common knowledge, that the vehicles just mentioned actually do as much harm and cause as much wear upon the roads as do the class of trucks, one of which is operated by appellee. That there are exempted, except for the payment of the ordinary and lower tag license, "motor vehicles used in lieu of street cars in or between municipalities, and taxicabs within the limits of a municipality and not exceeding three miles therefrom," and "motor vehicles engaged exclusively in the transportation of agricultural, forest and dairy products when such products are owned by the producer or where the forest products are being transported not exceeding twenty-five miles in their raw or unmanufactured state or as lumber." That there are likewise partially exempt "motor vehicles used by a hotel exclusively for its

patrons and employees, operating not exceeding fifteen miles distant from such hotel.''

The above exemptions and partial exemptions are entirely permissible and valid, and are sustained in principle and in detail by the exhaustive opinions in Continental Baking Co. v. Woodring (D. C.), 55 Fed. (2d) 347; Id., 286 U. S. 352, 52 S. Ct. 595, 76 L. Ed. 1155; Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167; Westfalls Storage, Van & Express Co. v. Chicago, 280 Ill. 318, 117 N. E. 439; Kellaher v. Portland, 57 Or. 575, 110 Pac. 492, 112 Pac. 1076; State v. Public Service Commission, 207 Wis. 664, 242 N. W. 668; and the many authorities cited in those opinions; and because so thoroughly covered by those opinions and the cases therein cited, we deem it unnecessary to repeat the discussions or to pursue the several features at length.

The point is made also that the sliding scale of automatic partial exemptions based on re-registrations found in section 2 of said chapter 135 renders the entire chapter invalid, because of the alleged discriminatory provision that ''this paragraph shall not apply to busses and to trucks of two and one-half tons carrying capacity, and over.'' There are two answers to this contention: First, it is competent for the Legislature to put in one class trucks below five thousand pounds' carrying capacity and into another class those above that carrying capacity. Second, the provision complained of is not so inseparably connected with the remaining portions of the act that, if the said provision were stricken down, the remainder of the act would also have to go down; and section 24 of the act expressly provides that the unconstitutionality of any portion shall not affect the remainder.

Other features of the statute are referred to as containing discriminatory provisions, but these references have been in the nature rather of suggestions than of

definite argument supported by authorities in point. We do not think the suggestions are well founded, but that they are technical and fanciful rather than actual and substantial.

Reversed, and bill dismissed.