STATE *ex rel.* RICE, ATTY. GEN., *et al. v.* CITY BUS CO., INC.

(In Banc.   Sept. 28, 1936.   Suggestion of Error Overruled Nov. 9, 1936.)

[169 So. 774.   No. 32190.]

598

W. W. Pierce, Assistant Attorney General, for appellants.

Eaton & Eaton, of Gulfport, for appellee.

Green, Green & Jackson, of Jackson, as amicus curiae.

Argued orally by **W. W. Pierce**, for appellant and by **James Eaton**, for appellee and by **Garner Green**, as amicus curiae.

**Smith, C. J.,** delivered the opinion of the court.

This is an action at law in which the appellant seeks to recover privilege taxes claimed to be due it by the appellee under subsection 3 of section 5 of chapter 126

of the Laws of 1934, for the operation by the appellee of busses owned and used by it in transporting passengers for hire over public highways of the state. The appellee pleaded the general issue, gave notice thereunder of affirmative matter it would introduce in evidence, and the case was tried without a jury on an agreed statement of facts, from which it appears that ''at all times between January 1, and October 1, 1934, the defendant owned and operated motor vehicles upon the public streets of Biloxi, Gulfport, Long Beach and Pass Christian, all municipal corporations of the state of Mississippi; and also upon the public highways of the state of Mississippi outside and between aforesaid incorporated municipalities; that the said defendant during said time operated twenty (20), motor vehicles over a regular route and on a regular schedule, and transported thereon passengers for hire; that the motor or serial number and seating capacity of each of said motor vehicles is as follows: (The statement of motor and serial numbers and seating capacity of each vehicle here omitted). The defendant prior to the beginning of the operation as aforesaid, registered each of its said motor vehicles with the auditor of public accounts and paid the flat annual privilege tax levied by subsection 1 (b) of section 2 and subsection 3 of section 4, of chapter 126 of the General Laws of Mississippi 1934. . . . Said motor vehicles have traveled on the public streets of the incorporated municipalities of Biloxi, Gulfport, Long Beach, Pass Christian and public highways of the state of Mississippi outside of said municipalities, the following designated number of miles each, in excess of six thousand miles. (Statement of excess mileage here omitted). The greater portion of the mileage traveled by each of said motor vehicles was upon the streets of the aforesaid incorporated municipalities. . . . Said motor vehicles are used in lieu of street cars in and between the incorporated municipalities of Biloxi, Gulfport, Long Beach and Pass Christian. Prior to the organization of the bus

service conducted by the defendant, street car service was conducted in and between said municipalities which was abandoned because the road-bed and right-of-way over which said street cars ran were required for the construction of a seawall under the Seawall Act, chapter 165, Mississippi Code of 1930 [section 6916 et seq.]; that after said street car service was abandoned, motor vehicles as aforesaid were installed and are now being operated in lieu of said street cars; that said motor vehicles are and continuously have been operated in the exact manner as to routes, schedules and fares as were street cars, and upon streets on which street cars were formerly operated; that outside of and between the incorporated municipalities of Biloxi, Gulfport, Long Beach and Pass Christian the highways over which said motor vehicles are operated are immediately adjacent to and parallel with the tracks upon which the street cars formerly operated. . . . The defendant has also been assessed and has regularly paid in said municipalities of Gulfport and Biloxi municipal taxes in large amounts each year upon said property there located, just as any other municipal taxpayer and said municipalities have, with their own funds maintained the streets in the corporate limits therof, wherever said busses move in lieu of street cars. Said busses are operated with gasoline on which have been paid regularly the state gasoline tax and also the horse-power tax and the gross weight tax, as well as other license taxes. Said streets are for the most part paved and have been constructed and are maintained by said municipalities. . . . The defendant City Bus Company obtained a certificate of convenience and necessity from the State Railroad Commission prior to commencement of its operation of busses on aforesaid routes.''

The pertinent provisions of chapter 126, Laws 1934, are: Section 1 defines certain words and terms used in the statute, among which are the words ''bus'' (subsection 3), and ''operator'' (subsection 5) and the term ''com-

mon carrier by motor vehicle," within all of which the appellee is included, the last-named being defined by subsection 11 of section 1 as follows:

"The term 'common carrier by motor vehicle' includes any common carrier of persons and any common carrier of property operating one or more motor vehicles for compensation over fixed routes or between fixed termini."

Subsection 12 of section 1 is as follows:

"The term 'permit carrier by motor vehicle' includes any carrier of persons and any carrier of property operating motor vehicles for compensation, either directly or indirectly, and all trucks of two and one-half tons carrying capacity or more, other than those included in paragraph (11), and other than the following:

"(a) Motor vehicles engaged solely and exclusively in transporting school children and teachers to and from public schools.

"(b) Motor vehicles engaged exclusively in the transportation of agricultural, forest, and/or dairy products when such agricultural, forest, and/or dairy products are owned by the producer, or where the forest products are being transported not exceeding fifty miles in their raw or unmanufactured state or as lumber; and motor vehicles engaged in hauling sand, gravel, dirt, stone and/or aggregate for road building purposes only.

"(c) Motor vehicles used in lieu of street cars in or between municipalities, or by a hotel exclusively for its patrons and employees, operation not exceeding fifteen miles distant from such hotel, and taxicabs within the city limits of a municipality, or not exceeding three miles therefrom.

"(d) Motor vehicles used by employees of the United States on official business.

"(e) Motor vehicles owned and operated exclusively by the United States, the state of Mississippi, or any subdivision thereof."

"Sec. 3. Every operator using the public highways of

the state (except as provided in section 1 hereof), shall pay as herein provided as a reasonable compensation for the use of its highways, a fair proportion or fair contributive share of the expenses of maintenance and repair of such highways and the expense of the administration and enforcement of the laws governing the use of such highways, including the expense of administering this act. . . . This act shall apply to operators of busses or trucks whether engaged in intrastate commerce or interstate commerce, or foreign commerce."

Subsection 3 of section 4 imposes a flat privilege tax on busses graded according to seating capacity. This tax is not involved here, but the pertinency of the section appears when subsection 3 of section 5 is read. This section and subsection are in part:

"There is hereby levied a mileage tax. . . . [subsection 3] on each bus engaged in the business of transporting passengers for hire over the public highways of the state, whether loaded or empty, in addition to the weight and horsepower tax imposed, for each mile of public highway in the state traversed by such vehicle, the following amount shall be paid:

|  | Cents per Mile |
|---|---|
| 7 passengers, or less | ¼ |
| More than 7 passengers and less than 14 | ½ |
| 14 passengers and less than 20 passengers | ¾ |
| 20 passengers and less than 26 passengers | 1 |
| 26 and over passengers | 1½ |

"The flat privilege tax imposed in the preceding section shall be for the privilege of using the streets and highways to the extent of six thousand miles, except on busses it shall be for the privilege of using the streets and highways to the extent of 12,000 miles, or in the event of commencement of business during the year, pro rata for the number of months for which the privilege is paid."

"Sec. 15. Every operator operating as a permit carrier

by motor vehicle shall provide each of his busses, and/or trucks, and/or trailer units of two and one-half tons carrying capacity or more, operated on the public highways of the state, with a speedometer which shall register the number of miles traversed by such vehicles, and the auditor of public accounts, or his representative or sheriff or deputy, shall have the right at any time to examine, inspect, and test such speedometer. . . . The mileage shown by such speedometer shall be evidence of the mileage traversed by such motor vehicle on the public highways of the state of Mississippi, but such mileage shall be subject to correction. . . . Each operator operating as a common carrier by motor vehicle under a certificate from the railroad commission over a fixed route or between fixed termini on a regular schedule shall take and return for the basis of taxation the mileage as determined by surveys, by the records or data supplied by the state highway commission, and shall not be required to provide speedometer records for the calculation of the tax herein imposed."

"Sec. 16. Every operator operating as a permit carrier by motor vehicle . . . shall keep a daily record of the actual miles of public highways of the state traversed by each such motor vehicle each day. Such daily record shall show the reading of the speedometer at the beginning of the month, the termini of each day's run, the mileage traversed each day. . . . After the expiration of the current month the daily record, or copy thereof, shall be filed with the auditor of public accounts with the monthly report herein required."

The appellee's contention are that:

(1) It is not within the class of operators of motor vehicles on which the statute imposes the tax here sought to be collected;

(2) If the statute should be construed to include the appellee, it would thereby be subjected to double taxation which the legislature did not intend to impose;

(3) If the appellee is subject to the tax at all it is only

for the mileage of its busses when traversing that portion of its route that is outside of the municipalities through which its busses run; and

(4) If the statute is construed so as to include the appellee it would be void for the reasons, (a) it would thereby become a burden on interstate commerce, (b) it would violate the obligation of a contract, and (c) it would violate section 9 of the federal highway act (23 U. S. C. A., sec. 9), which is as follows:

"Sec. 9. Freedom from tolls. All highways constructed or reconstructed under the provisions of this chapter shall be free from tolls of all kinds."

1. In support of its contention that it is not within the class on which the tax here in question is imposed the appellee says, in substance, that it appears from the parenthetical clause of section 3 that the legislature intended to exclude some operators operating motor vehicles over public highways from the tax, and that this exclusion appears in paragraph (c) of subsection 12 of section 1, under which carriers by "motor vehicles used in lieu of street cars in or between municipalities" are not permit carriers. To which may be added that the appellee is a common carrier within the definition thereof in subsection 11 of section 1, and for that reason also is not a permit carrier under subsection 12 of section 1.

It seems from the parenthetical clause of section 3— "except as provided in section 1 hereof"—that the draftsman of the act intended to exclude some carriers using the public highways from liability for the privilege tax which the act then proceeds to impose; but when we turn to section 1, to which the parenthetical clause refers, no words which therein appear, by themselves alone, suggest such an exception.

Subsection 12 of section 1 does not of itself alone designate what carriers are subject to the tax; it simply defines the term "permit carrier." The necessity for defining that term appears when we turn to sections 15 and 16, which provide the methods for ascertaining the

mileage of motor vehicles for the purpose of collecting the tax thereon. We may safely assume, unless the contrary appears, that the Legislature intended for the tax to apply to all vehicles for which the act provides a method for ascertaining their mileage, on which the tax is to be paid.

Sections 15 and 16 provide for the ascertainment of the mileage of two classes of motor vehicles: (1) Such as are operated by permit carriers; and (2) such as are operated by common carriers under a certificate from the railroad commission, etc. Such common carriers are not permit carriers under subsection 12 of section 1, which excludes from that term carriers who are within the term "common carrier by motor vehicle," as defined in subsection 11 of section 1.

The mileage of a permit carrier is to be determined by the speedometers with which his (or its) vehicles are required to be equipped and of common carriers, of the type described in section 15, "by surveys, by the records or data supplied by the state highway commission." The appellee is not a permit carrier, and therefore the method for determining the mileage of its vehicles by means of speedometers does not apply to it, but it is a "common carrier by motor vehicle under a certificate from the railroad commission over a fixed route . . . on a regular schedule," and therefore is within the provision of the act that the mileage of motor vehicles of such carriers shall be determined "by surveys, by the records or data supplied by the state highway commission." Consequently, since nothing in the statute indicates the contrary, it is within the statute's requirement for the payment of mileage tax on its vehicles.

Chapter 126, Laws 1934, re-enacted, with amendments not here material, chapter 135, Laws 1932, as amended by chapter 384, Laws of Extraordinary Session of 1932, and the appellee says that this court held in Hudson v. Stuart 166 Miss. 339, 145 So. 611, where chapter 135, Laws 1932 was under consideration, that carriers who were not per-

mit carriers under section 1 of that act were not subject to the tax imposed thereby, and again so decided when considering chapter 126, Laws 1934, in State v. Evans-Terry Company, 173 Miss. 526, 159 So. 658. In this the appellee is in error. In the first of these cases (Hudson v. Stuart) Stuart filed a bill of complaint against Hudson, a sheriff and tax collector, and Price, auditor of public accounts, praying that they be enjoined from attempting to collect from him the privilege taxes imposed by chapter 135, Laws 1932, and alleging, among other things, that the act was void for the reason that it "set up an arbitrary and unreasonable classification that is discriminatory against the rights of this complainant." A demurrer to this bill was overruled, and the defendants having declined to plead further, a final decree awarding the injunction was rendered. This decree was reversed by this court, and the bill of complaint was dismissed. It appears from the court's opinion that one of the complainant's contentions was that the act exempted carriers who were not permit carriers under section 1 thereof from the payment of the tax, particular reference being made to carriers who operated "motor vehicles used in lieu of street cars in or between municipalities." Section 1, subsec. 12 (c). Two methods were there open for determining the validity of the act: Either to say (1) that the act did not exempt such carriers from the payment of the tax; or (2) that assuming that it did exempt them therefrom, the exemption was not arbitrary, but rested on a reasonable basis. The case was decided by the latter method, and therefore the court was not called on to say whether the alleged exemptions were in fact conferred by the act. Whether counsel for the tax collectors argued the first of these questions does not appear from the reported excerpt from his brief, but whether he did or not is of no consequence here.

To the same effect is State v. Evans-Terry Company, supra. It is true that there the report of the brief of

counsel for the state seems to disclose that he assumed that carriers who were not permit carriers, including in his enumeration those operating "motor vehicles used in lieu of street cars in or between municipalities," were exempt from the tax. Nevertheless, the ratio decidendi of the case remains unaffected thereby. Moreover, in neither of those cases was the complaining carrier a common carrier, while the appellee here is such.

But, it is said that the state's tax collecting department construed chapter 135, Laws 1932, to exclude the appellee from the payment of this tax, which construction will be presumed to have been adopted by the legislature when reenacting it as chapter 126, Laws 1934. Assuming that such is the rule, it does not apply here for two reasons: (1) Chapter 135, Laws 1932, and chapter 126, Laws 1934, in so far as they deal with the matters here under consideration, are unambiguous, and the claimed departmental construction, if such there was, of chapter 135, Laws 1932, is plainly erroneous. When such is the case the rule invoked does not apply. 59 C. J. 1063; United States v. Missouri Pac. R. Co., 278 U. S. 269, 49 C. Ct. 133, 73 L. Ed. 322. And (2) no evidence of such a departmental construction is before us, unless it appears in the Stuart and Evans-Terry Company Cases, but there the claimed construction was put on the statute by taxpayers. It is true that in the Evans-Terry Company Case this construction seems to have been acquiesced in by counsel for the state, but that case arose not under chapter 135, Laws 1932, but under chapter 126, Laws 1934.

Nothing herein said must, or can reasonably, be construed as an intimation that carriers who are neither permit carriers nor common carriers within the provision of the second paragraph of section 15 are subject to the tax here imposed. What we have in effect said is that the statute provides no method of ascertaining the mileage of their vehicles, from which it may follow that the draftsman of the statute accomplished his purpose (set

forth in the parenthetical clause of section 3) of excepting some carriers from the tax imposed, a question not now before us and on which we express no opinion.

2. As to its claim of double taxation, the appellee says that it is taxed by the municipalities for the support and maintenance of the streets thereof. This is true, as appears from the agreed statement of facts, but that tax is paid by the appellee ''just as any other municipal taxpayer'' of the municipalities pays it. The tax here is not the tax there, but is a privilege tax for a 'particular use of the streets and no reason appears why it cannot be exacted. State v. Evans-Terry Company, supra.

3. In support of its contention that if here taxed at all it should be taxed only on the mileage of its busses outside of the limits of the municipality, the appellee says that section 4 of the act imposes a flat privilege tax ''for the purpose of using the public roads or streets,'' but that section 5 which imposes the mileage tax here sought to be collected omits the word ''streets'' and imposes a tax ''on each bus engaged in the business of transporting passengers for hire over the public highways of the state,'' thereby indicating that the mileage tax is not imposed for the use of the streets of a municipality. One complete answer to this contention is that subsection 9 of section 1 of the act provides that ''the term 'public highway' includes the public roads, highways, streets and bridges in this state.'' State v. Evans-Terry Company, supra.

4. It does not appear that the appellee is engaged in interstate commerce, but, on the contrary, all of its business seems to be intrastate, and under section 23 of the act, even if it should be held inoperative as to interstate commerce, it is still effective in so far as it applies to intrastate commerce, but that aside, no unlawful burden on interstate commerce is imposed by taxing the carriers thereof in the manner and for the purpose here provided. Interstate Transit v. Lindsey, 283 U. S. 183, 185, 51 S. Ct.

380, 75 L. Ed. 953; Aero Mayflower Transit Co. v. Georgia Public Service Comm., 295 U. S. 285, 55 S. Ct. 709, 79 L. Ed. 1439.

5. The contract, the obligation of which the appellee says is here violated, is that arising from the grant by the municipalities to the appellee of the right to operate its busses over their streets. The ordinances granting this franchise are not before us, and the mere grant of such a franchise does not relieve the person to whom it is granted from the burden of taxation.

6. The appellee frankly admits, as to its claim that the statute violates section 9 of the Federal Highway Act (23 U. S. C. A.), sec. 9, "that so far as the decisions go very probably this point has been decided against us." This seems to be true, but the decisions aside, it seems clear that no violation of that act here appears.

The judgment of the court below will be reversed and the judgment it should have, will be here, rendered, i e., for the appellant, for the recovery of the tax on the mileage of each of the busses which the agreed statement of facts shows each of them traveled in excess of 6,000 miles.

On the face of subsection 3 of section 5, chapter 126, Laws 1934, the mileage of the appellee's busses on which this tax is to be imposed is that in excess of 12,000 miles, but this excess is, in fact, that over 6,000 miles; that comes about in this way: Subsection 3, section 5 of chapter 135, Laws 1932, regular session of the Legislature), taxed the mileage of all motor vehicles in excess of 12,000 miles. That section of that chapter was amended by section 3 of chapter 384, Laws the Extraordinary Session of 1932, by substituting 6,000 miles in lieu of 12,000 miles. Section 26, chapter 126, Laws 1934, approved April 4, 1934, which re-enacted, with amendments, the two acts, provides: "That this act shall take effect and be in force from and after its passage, except that portion making changes in rates, which shall take effect

and be in force on and after December 1, 1934.'' Under this section the 6,000 miles excess provision of subsection 3, section 5, as amended by section 3, chapter 384, Laws Extraordinary Session of 1932, here applies.

So ordered.

**Ethridge, J.** delivered a concurring opinion.

The Attorney General and the state auditor of public accounts, brought suit against the City Bus Company for the mileage tax on busses owned by it under subsection 3, of section 5, of chapter 126, Laws 1934, amending chapter 135, Laws 1932.

The case was tried on a statement of facts agreeing that the state of Mississippi has the inherent power to levy and collect taxes; that the Attorney General and auditor were duly elected and are qualified officers; that the City Bus Company is a corporation organized under the laws of Maine, and authorized to do business in Mississippi, and that, at all times between January 1, and October 1, 1934, the City Bus Company, appellee, owned and operated motor vehicles upon the public streets of Biloxi, Gulfport, Long Beach, and Pass Christian, municipal corporations in Mississippi, and also upon the public highways of the state, over regular routes and on regular schedules, transporting passengers and property for hire. The numbers of such vehicles and their seating capacity are agreed to, as are also the number of miles traveled by such vehicles in excess of 6,000 miles, and that the greater portion of the mileage traveled by such vehicles was upon the streets of the aforesaid municipalities. It was further agreed that said vehicles are used in lieu of street cars, which service had been abandoned because the roadbed therefor had been used in the construction of a sea wall under chapter 165, Code 1930 (section 6916 et seq.), and that said vehicles are being operated at a deficit, but that they serve a public

need for transportation. It was further agreed that the appellee, the bus company, being assessed, has regularly paid taxes in large amounts in the municipalities of Gulfport and Biloxi, just as any other municipal taxpayer would do, and that said municipalities have, with their own funds, maintained the streets wherever said vehicles move in lieu of street cars, and, being operated with gasoline, have regularly paid the gasoline tax, the horsepower tax, and the gross weight tax, as well as other license taxes. It was further agreed that, prior to the commencement of its operation of motor busses on the aforesaid routes, the appellee obtained a certificate of convenience and necessity from the State Railroad Commission.

Chapter 126, section 1, Laws 1934, defines various terms used in the act. It defines "Commercial Motor Vehicles" as including all motor vehicles used for the transportation of property or passengers for hire. The word "person" is defined to include any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, or any group or combination acting as a unit. The word "bus" is defined to mean any motor vehicle designed for carrying passengers, except a school bus, which is defined to mean any motor vehicle engaged exclusively in carrying school children and teachers to and from school. It is provided in this chapter that where any bus has a seating capacity, or carrying capacity, fixed by the manufacturer, this shall be prima facie proof of such capacity, but that any motor vehicle, except as provided elsewhere in the act, may carry a 10 per cent greater load than that fixed by the manufacturer. The word "operator" is defined to mean any person, partnership, joint stock company, or corporation operating on the public highways of the state one or more busses or trucks as the beneficial owner or lessee; the word "driver" is defined as meaning the person actually driving such vehicle at any given time, and the term "motor vehicle" is defined as meaning all ve-

hicles propelled by any other than muscular power upon the highways for the transportation of persons or property, but the same shall not include road rollers, street sprinklers, fire engines, police patrol wagons, and locomotives or cars operated on tracks. The term "common carrier by motor vehicle" is defined to mean any common carrier of persons and property operating one or more motor vehicles for compensation over fixed routes or between fixed termini. The term "permit carrier by motor vehicle" is defined to include any carrier of persons, either directly or indirectly, for compensation, operating motor vehicles, and all trucks of two and one-half tons' capacity or more, other than those excluded in subsection 12 of section 1, and in this exception are school busses and various others, such as those used in the transportation of agricultural, forest, or dairy products owned by the producer, and where they are not being transported exceeding fifty miles in their raw or unmanufactured state, or as lumber, and motor vehicles engaged in hauling sand, dirt, stone, etc., for road building purposes only, and those used by employees of the United States on official business, and those owned and operated exclusively by the United States, the state of Mississippi, or any subdivision thereof.

Section 2 of chapter 126, Laws 1934, levies a public tax for the privilege of using the public roads or streets, on each motor vehicle used for the transportation of persons in the amount of ten cents per horsepower generated by the propelling motor, and thirty-five cents per hundred pounds based on the gross weight of the vehicle, and on each vehicle classified as a bus, including taxicabs, a tax of fifteen cents per horsepower, and fifty cents per hundred pounds based on the gross weight of the vehicle.

Section 3, chapter 126, Laws 1934, amending section 3 of chapter 135, Laws 1932, provides that "every operator using the public highways of the state (except as

provided in section 1 hereof), shall pay as herein provided as a reasonable compensation for the use of its highways, a fair proportion or fair contributive share of the expenses of maintenance and repair of such highways and the expense of the administration and enforcement of the laws governing the use of such highways, including the expense of administering this act.'' It is further provided in this section that no bus or truck shall be operated over the public highways in Mississippi without complying with the provisions of this act, and that the act shall apply to operators of busses or trucks, whether engaged in intrastate, interstate, or foreign commerce.

Section 4 levies a privilege tax upon various trucks and trailers, and subsection 3 thereof provides that on each bus, but not including taxicabs, in addition to the weight and horsepower tax imposed on all passenger motor vehicles, a tax shall be levied as follows: Seven passengers or less, seating capacity, thirty dollars; more than seven and less than fourteen, sixty dollars; fourteen and less than twenty passengers, ninety dollars; twenty and less than twenty-six passengers, one hundred and twenty dollars; and twenty-six passengers and over, seating capacity, one hundred and eighty dollars, and that this tax shall be paid annually in December of each year, or in case of commencement of business, but prior to such commencement, pro rata, according to the number of months remaining in the year, counting from the first day of the month when commencement is made, and shall be the minimum of taxes paid for the privilege of using streets and highways, provided, however, that any operator of busses may, at his election, where the annual schedule mileage of such bus does not exceed or equal twelve thousand miles, pay the proportionate part of the flat rate imposed by this section upon such bus that the annual scheduled mileage bears to twelve thousand.

Section 5 levies a mileage tax on each truck and trailer,

loaded or empty, operating over the highways of the state, in addition to the tax levied in the preceding section, in the amounts set forth therein, for each mile of public highway traversed, by such vehicles, and on each bus engaged in the business of transporting passengers for hire, over the public highways of the state, in the following amounts: Seven passengers or less, one-fourth cent per mile; more than seven passengers and less than fourteen, one-half cent per mile; fourteen passengers and less than twenty, three-fourth cents per mile; twenty and less than twenty-six passengers, one cent per mile; twenty-six and over passengers, one and one-half cents per mile. The flat privilege tax imposed in the preceding section is said to be for the privilege of using the streets and highways to the extent of six thousand miles, except on busses it is said to be for the privilege of using the streets and highways to the extent of twelve thousand miles, or pro rata for the number of months for which the privilege is paid.

It is then provided in section 6 that all the foregoing taxes shall be increased on vehicles equipped with two or more solid rubber tires in an amount equal to twenty-five per cent. of the tax due hereunder, and shall be paid when other taxes are paid, and be subject to the same commission, and shall be deposited in like time and manner, and in the same fund with the principal tax.

The appellee claims that it is exempt from the tax here involved by virtue of clause (c) of subsection 12 of section 1, chapter 126, Laws of 1934, while the appellant contends that this section does not contain any tax exemption.

It is a familiar rule of construction that one claiming exemption from a tax imposed in general terms must point to some provision of law clearly exempting. It is clearly the intention of this act to levy a general tax on certain classes of motor vehicles on a mileage basis for the use of the highways. Section 3 of chapter 126,

Laws 1934, provides that the tax shall be paid by every operator using the public highways of the state (except those set forth in section 1 thereof). To determine whether or not there are exemptions provided in section 1, it will be necessary to consider same. By turning to section 1, clause 3, paragraph. (a), we find the exception to be a "school bus used exclusively as such." In paragraph (b) the words "school bus" are defined to mean one engaged exclusively in the business of carrying school children and teachers to and from school. In subsection 10 of section 1, defining "motor vehicles," the exception is for "road-rollers, street sprinklers, fire engines, fire department apparatus, police patrol wagons, and locomotives or cars operated on rails or tracks." These are not included in the provisions of the act.

Under the agreed statement of facts, it does not appear to me that the appellee comes within the definition included in subsection 11 of section 1, chapter 126, Laws 1934, providing that the term "common carrier by motor vehicle" includes any common carrier of persons and property, operating one or more motor vehicles, for compensation, over fixed routes or between fixed termini; nor within the definition of a "permit carrier by motor vehicle." The appellee operates a bus line for hire covering an extensive distance, having a fixed termini, on a fixed schedule.

Whatever may have been in the minds of the Legislature in enacting the provisions of subsection 12 of section 1, clause (c), it cannot I think be construed to give an exemption from taxes imposed by subsection 3, of section 5, of chapter 126, Laws 1934, providing that "On each bus engaged in the business of transporting passengers for hire over the public highways of the state, whether loaded or empty, in addition to the weight and horsepower tax imposed, for each mile of public highway in the state traversed by such vehicle, the following amount shall be paid," etc. This imposes the tax here

involved, and it does not contain any exemption to the appellee, as held to exist by the court below.

It is argued that the Legislature must have had in mind the exemption of some of the motor vehicles involved, because of the provisions therein (except as provided in section 1 hereof). As stated above, section 1 exempts school busses and motor vehicles, etc. It is also argued that this court construed the act to give the exemption claimed in the cases of Hudson v. Stuart, 166 Miss. 339, 145 So. 611, and State ex rel. Rice v. Evans-Terry Co., 173 Miss. 526, 159 So. 658, in which it was contended by the party sought to be taxed that such tax was void because certain other parties were exempt from it operation. In these cases it was argued that certain motor vehicles were exempt from the tax by reason of clauses (a), (b), (c), (d), and (e), of subsection 12 of section 1, chapter 126, Laws 1934. It was held that was true, but it was a proper classification and did not render the statute unconstitutional because of unequal protection, or denial of due process, of the law. In the case of State of Mississippi ex rel. Rice v. Evans-Terry Company, supra, an appeal was taken to the Supreme Court of the United States (296 U. S. 538, 56 S. Ct. 126, 80 L. Ed. 383), but that court declined to review the decision, manifestly on the ground that the classification was permissible. Consequently those cases are not authority for the exemption here claimed.

The case at bar appears to be the first case presented where an operator of these motor vehicles seeks an exemption, and we are therefore confronted now, for the first time, with the duty of construing the statute in this respect. So construing it, I do not think the appellee is entitled to the exemption from taxes.

We are not now called upon to say whether instrumentalities of the state or of the federal government are exempt, or whether farmers, or those hauling the products of farms, or of lumber are exempt

from the tax. That question is not here presented, and it will be time enough to decide that question when it is properly presented; and it will require consideration of the full scope of the chapter to decide it.

The brief on behalf of the state proceeds on the theory that motor vehicles used by employees of the United States on official business, while exempt from the tax, are exempt, not by reason of subsection 12, but because it is beyond the power of the state to tax such vehicles. That question is not here involved, and will not be decided until a proper case shall be presented. But the state seems to be attempting to show that it cannot tax them for want of power. It is stated in a brief by one of the amicus curiae that under the case of Tirrel v. Johnston, 86 N. H. 530, 171 A. 641, a state can tax for facilities furnished the government, and that this case was affirmed in 293 U. S. 533, 55 S. Ct. 238, 79 L. Ed. 641. But, as just stated, we are not now called on to express an opinion on that subject.

I do not find any act that provides exemption for the appellee from the taxes imposed, and I am of the opinion that it is not exempt therefrom.

**Griffith, J.**, delivered a dissenting opinion.

The use of commercial vehicles upon the public highways of the state, as carriers of freight and of passengers, had become such an important feature of transportation within the state that the legislature deemed it wise as well as just that, in addition to the privilege road tax theretofore required of all motor vehicles, whether used for hire or not, a highway mileage tax would be required of trucks and busses. Accordingly, on May 18, 1932, there was enacted chapter 135, Laws 1932, dealing in an elaborate manner with this matter. By section 1 of that act the word "truck" was defined to mean any motor vehicle designed and used principally for the

transportation of any property and engaged in the business of transporting property; and the word "bus" was defined as any motor vehicle designed for carrying passengers and engaged in the business of carrying passengers for hire.

By section 5 of this act a mileage tax was imposed upon each truck whether loaded or empty, and without regard to whether or not used for hire, and by the same section a mileage tax was imposed upon each bus engaged in the transportation of passengers for hire. And as a means to ascertain and record the mileage upon which the tax was to be paid it was required by section 15 that each permit operator of a bus or truck should provide each of such vehicles with a speedometer, and it was made unlawful to operate such a vehicle without a speedometer, which instrument the operator was required also to keep in constant repair and to use in the correct recordation of the mileage.

But by subdivision 12 of section 1 of the act in defining "permit carrier by motor vehicle," the following language was used:

"(12) The term 'permit carrier by motor vehicle' includes any carrier of persons and any carrier of property operating motor vehicles for compensation and all trucks of two and one-half tons carrying capacity or more, other than those included in paragraph (11), and other than the following:

"(a) Motor vehicles engaged solely in transporting school children and teachers to and from public schools.

"(b) Motor vehicles engaged exclusively in the transportation of agricultural, forest, and/or dairy products when such agricultural, forest, and/or dairy products are owned by the producer, or where the forest products are being transported not exceeding twenty-five miles in their raw or unmanufactured state, or as lumber; and motor vehicles engaged in hauling gravel in the county wherein such truck is licensed.

"(c) Motor vehicles used in lieu of street cars in or between municipalities, or by a hotel exclusively for its patrons and employees, operating not exceeding fifteen miles distant from such hotel, and taxi-cabs within the city limits of a municipality, or not exceeding three miles therefrom.

"(d) Motor vehicles used by employees of the United States on official business.

"(e) Motor vehicles owned and operated exclusively by the United States, the State of Mississippi, or any sub-division thereof."

The paragraph (11) above referred to reads as follows: "(11) The term 'common carrier by motor vehicle' includes any common carrier of persons and any common carrier of property operating motor vehicles, for compensation over fixed routes or between fixed termini," and in this connection it is to be noted that section 15, requiring the use of speedometers by permit carriers excepts common carriers operating under certificate from the Railroad Commission between fixed termini on a regular schedule, the latter being taken as the basis for the computation of the mileage, making the use of a speedometer unnecessary.

It will thus be seen that except as to common carriers by motor vehicle operating over fixed routes or between fixed termini, the method provided by the Legislature for the ascertainment and report of the mileage was by the use of speedometers. but it is also seen that the motor vehicles mentioned under subheads (a) to (e) and as above-quoted were not required to carry speedometers, and generally they operated upon no regular routes nor between fixed termini. No method was supplied for the ascertainment of the mileage as to them, and moreover from the very nature of their use and the places thereof, it was and is perfectly plain that the Legislature had no thought of imposing a mileage tax upon them. Moreover, by section 3 of the act it was enacted as follows:

"Every operator using the public highways of the state (except as provided in section 1 hereof), shall pay as herein provided," etc., and as hereinafter pointed out, unless the parenthesis above quoted refers to those mentioned under subheads (a) to (e) of paragraph 12 of section 1, the parenthesis is left without any substantial meaning, if any at all.

Under the act of 1932, above discussed, the Attorney General and all the administrative departments of the state having to do with the matter, took the view, and uniformly held to that view, that those mentioned under said subheads (a) to (e) were not subject to the mileage tax. And this position was taken and maintained in the most solemn manner by which it could be made of record. The act was attacked in court because of the exemption so-called of those mentioned under those subheads, and as a denial of the equal protection of the laws. The Attorney General defended, admitting the exemptions so-called, and urged that the classifications were reasonable. That contention was sustained by this court in Hudson v. Stuart, 166 Miss. 339, 145 So. 611, decided here on January 16, 1933. The Attorney General and all departments were still maintaining that position when the case, State of Mississippi ex rel. Rice v. Evans-Terry Co., 173 Miss. 526, 159 So. 658, was decided here on February 25, 1935, and when affirmed by the Supreme Court of the United States on October 14, 1935. 296 U. S. 538, 56 S. Ct. 126, 80 L. Ed. 383.

Such was the interpretation of the act of 1932, and by all departments having to do with it from the time of its enactment up to the time of and long after the convening of the regular session of the Legislature in 1934. At that session chapter 126, Laws 1934, was passed and approved April 4, 1934. This Law of 1934 was a complete rescript of the Law of 1932, and as to the matters herein discussed the Act of 1934 was in the same language as that used in 1932 save in one or two immaterial par-

ticulars. If therefore the vehicles mentioned under subheads (a) to (e), paragraph 12 section 1 of chapter 135, Laws 1932, were not subject to the mileage tax, then they are not subject thereto under the same subheads in the same section of chapter 126, Laws 1934. The law is well settled that the re-enactment of a statute in the same or substantially the same terms, after it has received a practical construction by the executive or administrative departments of the government, is an adoption of such construction. In White v. Miller, 160 Miss. 734, 133 So. 146, this court held that Legislature in re-enacting a statute is presumed to have known of the construction theretofore placed thereon by governmental departments, and by such re-enactment, without substantial change of language as to the points involved, to have adopted the said previous construction so placed thereon.

The majority take recourse, however, to the general and familiar principle, applied well enough in most cases, that an exemption from taxation must be found in language which is clear and definite; but this principle is, at last, but an aid in construction, and has no inexorable operation. It is to be admitted that the act is far from perfect as a piece of legislative draftsmanship. In its original enactment in 1932 it was probably cut to pieces by the ever-present and ever-ready proponents of half-considered and half-prepared amendments; but because of the construction placed upon it as aforementioned, it was not considered necessary to review and revise its language when reenacted in 1934. Conceding the imperfections of draftsmanship, members of the Legislature, and all others will be astonished to learn that, under the majority opinion of this court, the Legislature has placed a mileage tax upon trucks owned and operated exclusively by the United States as a privilege for the use of the highways of the state, when the main highways of the state in their finished state have been largely constructed by federal appropriations, and when millions

of dollars have been freely given by the federal government to this work. They will be astonished to learn that, according to this court's interpretation, they have placed a mileage tax against trucks used exclusively in the transportation of agricultural, forest, and dairy products when owned by the producer, or where forest products are being transported in their raw state over short distances, including trucks engaged in hauling sand, gravel, dirt, stone, or the aggregate thereof for road building purposes only; and that the Legislature has imposed a mileage tax upon busses used in lieu of street cars in municipalities which construct and maintain their own streets without state aid, and when the state refuses to divide even a part of one cent of the gasoline taxes with the municipalities.

It is too plain for tenable debate that the Legislature had no thought of subjecting the motor vehicles mentioned in the last paragraph to a road mileage tax. The intention to exempt some of the vehicles included in the subheads (a) to (e) may not be so clear as that in respect to those mentioned in the foregoing paragraph, but the maxim, noscitur a sociis, comes into operation and puts all within the subheads as much within the legislative intent as those wherein by their very nature the intent is unmistakable.

In the most recent case with which this court has dealt with the subject of statutory construction, Zeigler v. Zeigler, 164 So. 768, 770, the court said: "In construing statutes, the chief desire of the courts is to reach the real intention of the Legislature, and knowing this to adopt that interpretation which will meet the real meaning, though such interpretation may be beyond or within, wider or narrower, than the mere letter of the statute. Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible." This rule applies to taxation

exemption statutes equally with all others. In 61 C. J. at pp. 396, 397, treating of this precise subject, it is said: "The rule of strict construction does not call for a strained construction, adverse to the real intention of the legislature, but the judicial interpretation of it must always be reasonable and in accordance with the actual meaning of the lawmaking power, taking into consideration the entire tax statute, the spirit as well as the letter of the law, . . . the legislative policy in the making of the law, the use and in some cases, the primary as distinguished from the incidental use to which the property is devoted in determining whether it falls within the terms of the exemption statute." In Adams County v. Catholic Diocese, 110 Miss. 890, 71 So. 17, 19, our court in discussing an exemption statute, gave adherence to the rule last above quoted, and expressly said of such statutes that in construing them "we must look to the intention of the Legislature, the spirit of the law, and the policy and purpose of the same."

When we consider the nature and use of the vehicles, and the places where used as itemized under the above-mentioned subheads (a) to (e) there can be no fair doubt, as heretofore urged, that there was no intention or thought of imposing a mileage tax upon them. They were exempted from the use of a speedometer whereby no means was provided or required for the measurement or recordation of the mileage; and there could be no more persuasive indication of a purpose to exempt than the omission of a means or method to measure or record the alleged tax; and finally there is the provision in section 3 that "every operator using the public highways of the state (except as provided in section 1 hereof), shall pay," etc. If the parenthetical exception does not refer to the vehicles listed under the said subheads (a) to (e) of paragraph 12 of section 1, then it has nothing to which to refer. The majority opinion undertakes to take care of this point by saying that the exception re-

fers to school busses and to road rollers, street sprinklers, fire engines, fire department apparatus, police patrol wagons and locomotives or cars operated on rails or tracks; but if it is to these that the parenthetical exception refers, the parenthetical exception was and is wholly useless and inoperative, and to so construe it is to strike it out of the statute; because in the definition of busses subsection 3 of section 1 of the 1934 act, school busses are excluded from the definition of a bus, and in the definition of motor vehicles subsection 10 of section 1, the road rollers, street sprinklers, and the other vehicles last mentioned in connection with them are excluded from the term "motor vehicles" and are not motor vehicles at all within the act. School busses and street sprinklers and the like were put outside the act, when they were said to be neither busses nor motor vehicles, and since busses and trucks are the vehicles that are taxed with mileage, the only things to which the parenthetical exception in section 3 could refer with any force, and if not to be stricken out as meaningless, are those under subheads (a) to (e) in paragraph 12 of section 1.

Had the majority opinion decided only that the busses operated by appellee are not within subhead (c), that is to say are not within the language "motor vehicles used in lieu of street cars in or between municipalities," there would perhaps have been no dissent, but when the majority goes further, and says that none of the vehicles mentioned in subheads (b), (c), (d) and (e) of paragraph 12 of section 1 are exempt, the decision is driven beyond the plain purpose of the act and to the point where the Legislature is declared as having acted not only unjustly, but absurdly.

Since the foregoing dissent was prepared and submitted, a modification has been made in the majority opinion, disclaiming decision upon the matters with which this dissent has dealt. But the course of reasoning by

which the majority has arrived at its conclusion has not been modified, wherefore there is no occasion to rewrite this dissent beyond the addition of this concluding paragraph.